### S. H. LUMPKIN v. ADAMS & WICKS.

#### No. 6161.

1. **Notice—Registration.**—Besides creditors, the registration of a deed affects with notice of its contents only subsequent purchasers and mortgagees of the same land from the same vendor. Other purchasers from a prior vendor can not be held to have notice of the deed. See facts.

2. **Same.**—A purchaser is not charged with notice of the record of a deed made by a vendee of the same vendor if such vendee's deed is not itself on record so as to complete the chain of his title.

3. **Same.**—One who is not chargeable with notice of the registration of a deed can not be affected by any facts set forth in the recitals found in such deed.

4. **Quit Claim Deed.**—A purchaser under a quit claim deed and for a nominal consideration can not be a bona fide purchaser.

5. **Innocent Purchaser—Notice.**—A purchaser who has actual knowledge that a deed in the chain of title was afterwards made inoperative as a deed absolute by an unrecorded defeasance which constitutes it a mortgage, must exercise reasonable diligence to ascertain not only whether the mortgage has been satisfied but in what manner this was done.

6. **Purchaser at Administrator's Sale.**—Such purchaser does not in all instances take as under a quit claim deed. He may be an innocent purchaser and entitled to protection against an unrecorded deed by the intestate and against secret trusts between such intestate and others.

APPEAL from San Saba. Tried below before Hon. A. W. Moursund.

This suit was brought by appellees on April 13, 1886, in trespass to try title and to remove cloud, against appellant for the 616-acre survey of land located in San Saba County, Texas, and patented by the State of Texas to Jacob De Cordova, assignee of the German Emigrant Company, on October 16, 1856. Defendant pleaded not guilty, a jury was waived, and this case was submitted to the court on December 14, 1886, on which day judgment was rendered in favor of appellees and against appellant for the land and costs of suit.

The findings of the court were as follows:

1. That the title to the premises was originally vested in Jacob De Cordova, and has through regular conveyances passed from him to plaintiffs (appellees), who are now and have been for a number of years prior to this suit the owners of the same.

2. That the conveyance from Jacob De Cordova to Victor Considerant, dated January 9, 1856, and recorded in Bexar County January 11, 1856, was intended to vest the legal title to the lands therein described in Victor Considerant.

3. That Jacob De Cordova died in 1868.

4. That defendant claims title under a conveyance made to him by L. B. Davis, administrator of the estate of Jacob De Cordova, November 26, 1881, recorded in San Saba County June 9, 1882.

5. That said conveyance by L. B. Davis was made under orders of the Probate Court of Bosque County, and the purchase money paid as therein recited by defendant.

6. That San Saba County was organized in June, 1856.

7. That a trust deed from Jacob De Cordova to F. Gilbeau was made January 22, 1857, and recorded in San Saba May 24, 1882, and F. Gilbeau as trustee conveyed to James R. Sweet on March 2, 1858, which deed was recorded in Bexar County; James R. Sweet conveying by war-

ranty deed to plaintiffs July 18, 1870, reciting and referring to the deed from Gilbeau, trustee, to him, giving book and page of record in Bexar County. This deed was recorded in San Saba County June 16, 1871. All these deeds embraced the land in controversy.

8. That the land in controversy is now in San Saba County and has been situated in same since its organization.

Upon which facts the court finds as conclusions of law:

(1) That at the time defendant purchased at administrator's sale he had constructive notice that the estate of Jacob De Cordova had no title to the land in controversy, and that the legal title thereto was in plaintiffs.

(2) That plaintiffs are entitled to recover the premises sued for and costs.

The deed of trust referred to in the seventh finding of the court was executed to secure a note of Jacob De Cordova to V. Considerant, of date January 22, 1857, for $2576, due in six months, the deed of trust being of the same date, and the deed of trust conveyed the same lands described in the deed of De Cordova to Considerant. The deed of trust was recorded in Bexar County June 9, 1874, and in San Saba County May 24, 1882.

The deed of the trustee, Gilbeau, to Sweet was dated March 2, 1858, and was filed for record in Bexar County April 26, 1859. The deed of Sweet to plaintiffs, of date July 28, 1870, was recorded in San Saba County June 16, 1871, reciting: "The above lands having been conveyed to James R. Sweet (this vendor) by Francis Gilbeau, trustee of Jacob De Cordova, by deed dated March 2, 1858, which deed is recorded in the record of deeds of Bexar County in Book R No. 2, on pp. 374 and 375."

August 17, 1885, Considerant quit-claimed to plaintiffs for recited consideration of one dollar.

In the estate of De Cordova, deceased (who died in Bosque County in 1868), of date September 19, 1881, the Probate Court of Bosque County ordered the administrator to sell the land in controversy with other lands to pay debts of the estate. The administrator made report of sale of the land in suit to the court, showing that he had sold it to defendant Lumpkin according to law for $22, which sale was duly confirmed by the court, after which, on November 26, 1881, the administrator made the deed to Lumpkin. It was proved on the trial that defendant Lumpkin paid the $22 bid by him for the land, and that he had no actual notice of plaintiffs' title.

*S. H. Lumpkin,* for appellant. — 1. When a deed and a defeasance are executed by and between the same parties (respectively on January 9, 1856, and January 19, 1856), for and concerning the identical and same

lands and land certificates, and both read in evidence on trial in court below without any oral evidence or explanation, the court in order to arrive at the intention of the parties should construe said instruments together, and if the defeasance annuls the deed and engrafts upon it the essence of a mortgage the court should so hold and give judgment against the party relying upon said deed as an absolute conveyance. Carter v. Carter, 5 Texas, 93; Beale v. Ryan, 40 Texas, 399; Boatright v. Peck, 33 Texas, 68; Hobby's Land Law, sec. 30; Duty v. Graham, 12 Texas, 434; Mann v. Falcon, 25 Texas, 272.

2. A subsequent purchaser at an administrator's sale who pays for the land without actual or constructive notice is protected by our registration laws and has a superior title to that of an unrecorded conveyance from the decedent. Taylor v Harrison, 47 Texas, 454, and authorities cited; Rev. Stats., arts. 4332, 4333; Pasch. Dig., art. 4988; Grace v. Wade, 45 Texas, 522; Grimes v. Hobson, 46 Texas, 416; Watson v. Chalk, 11 Texas, 89; Wimberly v. Pabst, 55 Texas, 587.

3. The court erred in holding that the plaintiffs under said quit claim deed from V. Considerant, of date August 17, 1885, were innocent purchasers for a valuable consideration without notice to said V. Considerant or to themselves. Hobby, sec. 540; 39 Texas, 283; Harrison v. Boring, 44 Texas, 255.

4. The court erred in failing to give judgment to the defendant and against the plaintiffs in this case, because he was an innocent purchaser for a valuable consideration and without notice of older title. Rev. Stats., arts. 4332-34; Pasch. Dig., arts. 4988, 4994; Hart. Dig., art. 2775; Taylor v. Harrison, 47 Texas, 459; Holmes v. Johns, 56 Texas, 52; Grace v. Wade, 45 Texas, 524; Wimberly v. Pabst, 55 Texas, 587.

5. The court erred in holding that the recitation in the deed from James R. Sweet to plaintiffs reciting a record of a deed from F. Gilbeau, trustee, to James R. Sweet, of date March 2, 1858, and recorded in Bexar County, Texas, on April 26, 1859, was constructive notice to the defendant, because if said deed was recorded as cited that the record of the same was not in the county where the land lies, said San Saba County being organized in June, 1856, and record of deed in Bexar County, Texas, in 1858 or 1859 for lands in San Saba County, Texas, would be no notice. Watson v. Chalk, 11 Texas, 89; 56 Texas, 268; 46 Texas, 416; 60 Texas, 223; Watkins v. Edwards, 23 Texas, 448.

6. The constructive notice which is conveyed by the proper recording of deeds extends only to the deed recorded and not to the unrecorded deeds in a chain of title, as if A conveys to B, and B to C, and C to D, and the conveyance to D only is recorded, it is not constructive notice to subsequent purchasers from A or B. Watson v. Chalk, 11 Texas, 89; Thompson v. Westbrook, 56 Texas, 268; Grimes v. Hobson, 46 Texas, 416.

7. Under the registration laws of Texas all deeds, deeds of trust, and

mortgages for real estate are void as to all creditors and subsequent purchasers for valuable consideration without notice unless such instrument shall have been acknowledged or proved and filed for record in the county where said lands or part thereof is situated before date of subsequent sale. Rev. Stats., arts. 4332, 4333; Pasch. Dig., art. 4988; Grace v. Wade, 45 Texas, 522; Grimes v. Hobson, 46 Texas, 416; Adams v. Hayden, 60 Texas, 223; Taylor v. Harrison, 47 Texas, 456; Wetheral v. Boon, 17 Texas, 143; Rev. Stats., art. 2318.

*Burleson & Harris,* for appellees. — 1.   The court did not err in finding "that the conveyance by Jacob De Cordova to Victor Considerant, dated January 9, 1856, and recorded in Bexar County January 11, 1856, was intended to vest the legal title to the lands therein described in Victor Considerant." It is the established doctrine that only on purely equitable grounds will a deed absolute upon its face be declared to be a mortgage, and only then upon the clearest and most satisfactory proof. Calhoun v. Lumpkin, 60 Texas, 189, 190; Alstin v. Cundiff, 52 Texas, 462; Ag. Assn. v. Brewster, 51 Texas, 263; Moreland v. Barnhart, 44 Texas, 283; 1 Jones on Mort., sec. 260; Fullerton v. McCurdy, 55 N. Y., 637; Hassam v. Barrett, 115 Mass., 256; Price v. Kames, 59 Ill., 276; Henley v. Hotaling, 41 Cal., 22; Kent v. Lasley, 24 Wis., 654; Phillips v. Croft, 42 Ala., 477; Haines v. Thompson, 70 Pa. St., 92, 434.

2.   Previous to the decision of this court in the case of Taylor v. Harrison, 47 Texas, 454, it was the recognized doctrine in this State that a purchaser at an administrator's sale was regarded in the same light as a grantee in a quit claim deed.   Rogers v. Burchard, 34 Texas, 453.

We submit that Taylor v. Harrison only indicates this distinction, whether a purchaser at an administrator's sale shall be regarded as a grantee in a quit claim deed is to be determined from the purposes, character, and terms of the sale, the adequacy of the price, and other circumstances attending the transaction.   We further submit that the burden of proof should be upon such purchaser to show that all those features and circumstances entitle him to the protection of a bona fide purchaser for a valuable consideration without notice.   Harrison v. Boring, 44 Texas, 262, 263; 1 Greenl. on Ev., sec. 74; Abb. Tr. Ev., 715.

3.   On January 11, 1856, Bexar County was the proper place of record for conveyances pertaining to land in San Saba County.   An after acquired title enures to the benefit of a grantee in a warranty deed.   Adams & Wicks v. House, 61 Texas, 641; Harrison v. Boring, 44 Texas, 261; Gould v. West, 32 Texas, 352, 353; 4 Kent, 98.

COLLARD, JUDGE.—It is evident that the deed of Jacob De Cordova to Victor Considerant, of January 9, 1856, was intended as a mortgage to secure an indebtedness of Cordova to Considerant, and that the latter

so accepted it.   The deed conveyed the survey in dispute, not then patented, and other surveys.   Ten days afterwards Considerant, the vendee, acknowledged in writing to Cordova that he had received deeds from Cordova to a number of surveys, including a deed to the certificate located on the land in dispute, to secure the payment of Cordova's two notes to him, one for $2240, the other for $60, and covenanted to reconvey the lands and certificates to Cordova upon the payment of the notes, both of which were dated of even date with the defeasance.   The defeasance is of different date from the deed, but refers to it as having been then received.   As a further proof of this we find that afterwards, on the 22d day of January, 1857, Cordova executed a deed of trust to F. Gilbeau, trustee, to secure the payment of a note of Cordova of same date to Considerant for $2576 upon the same lands described in the deed of January 9, 1856, including the land in controversy, which deed of trust was executed by Gilbeau, the trustee, by sale of the land to James R. Sweet, March 2, 1858, who conveyed to plaintiffs by warranty deed July 18, 1870, after which, in 1885, Considerant quit claimed to plaintiffs for the consideration of one dollar.   These facts show very conclusively that Considerant accepted the deed of January 9, 1856, as a mortgage, and that both parties so intended it.   Considerant not only expressly covenants to reconvey the premises upon the payment of the debt due him by Cordova, but he afterwards accepted a deed of trust on the same property to secure another note due by Cordova to him, and by his quit claim to plaintiffs in effect recognizes and ratifies the sale under the deed of trust to Sweet, from whom plaintiffs purchased.   It results from this that we must look to plaintiffs' deraignment under the deed of trust for their title. Their title is perfect under that deraignment unless defendant is entitled to protection against it as an innocent purchaser.

Defendant claims title by a deed to him by Davis, administrator of the estate of Jacob De Cordova, November 26, 1881, for a consideration of $22.   The administrator's sale was regularly made by order of the Probate Court of Bosque County, where administration of Cordova's estate was pending, the sale was duly confirmed, and the deed ordered to be made to the purchaser.   It was proved that the defendant paid the $22 bid by him for the land, and that he had no actual notice of plaintiffs' title.   Plaintiffs claim that defendant had notice of their title at the time of his purchase by virtue of the record of the deed of J. R. Sweet to them, of date July 18th, 1870, recorded in San Saba County June 16th, 1871, and by virtue of the record of the deed of Cordova to Considerant in Bexar County on the 11th day of January, 1856.

First, as to the record of the deed of Sweet to plaintiffs in San Saba County.   It contains the following statement or recital:   "The above lands having been conveyed to James R. Sweet (this vendor) by Francis Gilbeau, trustee of Jacob De Cordova, by deed dated March 2d, 1858,

which deed is recorded in the record of deeds of Bexar County in Book R No. 2, on pages 374 and 375." This record was no notice to defendant of the deed to Sweet by Cordova's trustee. Besides creditors, the registration of a deed affects with notice of its contents only subsequent purchasers and mortgagees of the same land from the same vendor. Pasch. Dig., arts. 4988, 4994; Rev. Stats., arts. 4332–34; 3 Wash. on Real Prop., 319.

Other purchasers from a prior vendor can not be held to have notice of the deed. They are only bound to search the records and know what they contain of sales and encumbrances made by persons under whom they claim. Such records only can affect their rights.

Mr. Washburn correctly states the law of the case before us as follows: "Nor is a purchaser bound to take notice of the record of a deed made by a vendee of the same vendor if such vendee's deed is not itself on record so as to complete the chain of his title." Id., p. 316.

If defendant was not bound to take notice of Sweet's deed to plaintiffs. on account of its registration he was not bound to take notice of its recitals.

Now as to the record of the deed of Cordova to Considerant. The record was made at a time when it is conceded the land in controversy was in Bexar County, where the deed was recorded, and it must follow that defendant was affected with constructive notice of the conveyance, and it would also follow that if plaintiffs were in a position to be held bona fide purchasers from Considerant for value they would be protected under their purchase from him notwithstanding the defeasance. But they are not in such position, because their claim under Considerant is by a quit claim deed and for a nominal consideration. Besides, they claim and their real title is under the deed of trust from Cordova to Considerant, which seems to have been substituted by the parties, Cordova and Considerant, for the first transaction evidenced by the deed and the defeasance.

We do not intend to hold positively that the deed of trust was such substitution, but that there is some evidence to that effect, and upon another trial there may be more that will unquestionably establish the fact. Defendant (appellant) in his brief argues that the deed of trust was so substituted because the debt and note secured by the trust deed was $2576, which is the amount principal, and interest at twelve per cent per annum, of the two notes mentioned in the defeasance, for one year, the date of the new note, and the deed of trust being one year and three days after the notes described in the defeasance, which were due at one year. The rate of interest of these two notes does not appear, but the new note secured by the deed of trust was due in six months and bore interest at twelve per cent. after maturity. It is a question of fact which we do not decide as to whether the transaction represented by the deed of trust was a substi-

tution of that represented by the deed of the 9th of January, 1856, and the defeasance of the 19th of the same month. The court below did not find upon this question, the decision for plaintiffs resting upon different grounds.

If it should be found that such substitution or revocation was made, then on the question of notice to defendant we have this to say: Ostensibly the record of the deed of Cordova to Considerant was constructive notice to defendant (at the time of his subsequent purchase from Cordova's estate) of an absolute conveyance in fee simple of the land. The deed was in fact intended as a mortgage, but the defeasance was not of record. It is upon this defeasance, coupled with the fact that the deed of trust executed twelve months afterwards and the conveyance to Sweet by the trustee were not of record, that defendant relies to show that he was an innocent purchaser. He produced the defeasance on the trial.

If he had actual knowledge of the defeasance at the time of his purchase he would be put upon inquiry and would be required to exercise reasonable diligence to ascertain the facts constituting any change in or renewal of the mortgage — reasonable diligence to inform himself if the mortgage had been satisfied, and if satisfied how it had been satisfied. If then he had such knowledge of the defeasance, and the deed of trust was substituted for the mortgage, he would be put upon inquiry as to that and the subsequent conveyance to Sweet. It seems that the facts could have been easily ascertained, as Considerant was alive in 1885, several years after defendant's purchase.

Plaintiffs are not limited to this one method of showing that defendant would be presumed to have had notice of their title. The notice, actual or presumptive, may be shown by other evidence.

Plaintiffs contend that the gross inadequacy of price paid for the land by defendant is evidence that he had such notice, or at least that his right to the land was only a quit claim right. The evidence decidedly indicates that the price paid by defendant was a grossly inadequate consideration, and it was said in Harrison v. Boring, 44 Texas, 262, that "not only the terms of the deed but the adequacy of the price given and other circumstances attending the transaction may serve to show when brought in evidence whether the purchaser bought the land or merely the title." 2 Pom. Eq., sec. 600; Taylor v. Harrison, 47 Texas, 454.

The conclusion of the court below was not predicated upon the inadequacy of price paid at the administrator's sale, nor does the evidence positively show what the land was worth at that time. We therefore withhold any opinion upon this subject.

We do not agree with appellees that a purchaser at an administrator's sale necessarily takes as under a quit claim deed. He may be an innocent purchaser and entitled to protection against prior unrecorded con-

veyances by the intestate and secret trusts between him and others.    Love v. Berry, 22 Texas, 372; Taylor v. Harrison, *supra.*

We are of opinion the judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted May 21, 1889.