Douglas v. Kansas City.

---

DOUGLAS, Appellant, v. KANSAS CITY, Appellant.

Division One, December 23, 1898.

1. **Appellate Jurisdiction:** AMOUNT INVOLVED. Plaintiff sued for $2,682.50 and obtained judgment for $1,218.60, and both parties appealed—the plaintiff claiming the court erred in failing to award him the full amount sued for, and the defendant asserting that plaintiff was not entitled to recover anything. *Held*, that the "amount involved" is the entire sum sued for or in controversy between the parties, *and* that the Supreme Court has jurisdiction of the appeal.

2. ———:· ———: CROSS APPEALS. In cross appeals in the same case, if the amount really in controversy between the parties, as the case stands in the *appellate* court, and which will be *concluded* by the judgment of such court in disposing of the appeals of *both* parties, exceeds $2,500, the Supreme Court has appellate jurisdiction.

3. **Municipal Corporation**: EXTENSIONS: LICENSES. The extension of the limits of a municipal corporation being unlawful and void, taxes collected by it from persons within the added territory can not be retained on the theory that the city had estabilshed a *de facto* government and expended the money for municipal purposes in such added territory. The extension being invalid all attempts at municipal government therein were void *ab initio*.

4. ————: ————: ————: VOLUNTARY PAYMENTS: DURESS: ARREST: CIVIL ACTION. A city had unlawfully extended its borders, and exacted of plaintiff the payment of a license tax, and police officers threatened him with immediate arrest and the closure of his business, unless the tax were paid. The city's agent had the power to carry out such threats. *Held*, that the payment of the license tax was not voluntary, but made under duress, and could be recovered back. Nor can the city claim that such threats did not constitute duress on the theory that prosecution under its ordinances was a civil proceeding.

5. ————: ————: ————: ————. Payment of license taxes to a city, voluntarily made, without threats of arrest or seizure of property, even though notices are sent to the payers that unless they pay they will be arrested and prosecuted, is not made under duress, and can not be recovered.

6. ————: ————: ————: DURESS PAYMENT: TORT: ASSIGNMENT: PRACTICE. Where it was stipulated in the trial court that the plaintiff is the *bona fide* owner of various claims against the city the city will not be permitted to contend on appeal that the claims are not assignable (because the demands arise out of a tort), nor will the the Supreme Court determine whether or not they are assignable, no such question having been presented to the lower court.

*Appeal from Jackson Circuit Court.*—HON. CHAS. L. DOBSON, Judge.

AFFIRMED.

C. O. TICHENOR for plaintiff-appellant.

(1) The ordinance by which the city sought to extend its limits, was a nullity; it had no more effect on the territory outside of the city than if it had not been passed. The other ordinances have no extra-territorial effect; they were not intended to have it and could not have had it had there

been such intent. What then? The city must have derived this right to collect licenses and arrest and imprison persons from force; from an illegal invasion of territory by the officers of the city. So, then, this is a right derived solely from a wrong—from a violation of law. (2) Counsel says that suit against a person for failing to pay a license is "merely a civil suit for the collection of a fine," and having come to this conclusion, he sums up the whole matter by a question: "Does a threat to begin a civil suit constitute duress?" We beg to suggest to him that he might think differently after having received notice of such a suit, by being dragged through the streets of Kansas City by a policemen, at a speed somewhat quickened by the benign influence of a club. If counsel should still be in doubt, certainly the doubt would be removed after lying in jail a day or two waiting for the trial, and after enjoying a term of six months in prison in the city workhouse as the result of it. Kansas City v. Neal, 122 Mo. 234; Lima Township v. Jenks, 20 Ind. 303; Railroad v. Patterson, 41 Ind. 321; Hines v. Board, 93 Ind. 271. (3) It is claimed by counsel that these claims could not be assigned; that these claims are damages caused by a tort. Even if this were true, no such point was raised below, and it was solemnly admitted by defendant that these claims were assigned to plaintiff for value and that he was the *bona fide* owner thereof. But this is an action for money had and received. Maguire v. Savings Ass'n, 62 Mo. 344; Dillon on Mun. Corp. (3 Ed.), sec. 939.

R. B. MIDDLEBROOK for defendant-appellant.

(1) Kansas City, after the adoption of the charter amendment extending the limits, on December 4, 1889, established and maintained a *de facto* government over the annexed territory, in which plaintiff and his assignors conducted their business, as saloon keepers, and they received

Douglas v. Kansas City.

the protection of this government and enjoyed the privileges emanating from it. And the acts of this *de facto* government ought to be upheld and recognized as a matter of public policy. Simpson v. McGonegal, 52 Mo. App. 540; Perkins v. Fielding, 119 Mo. 149; Adams v. Lindell, 72 Mo. 198; Thomas v. Taylor, 42 Miss. 703; O'Byrne v. Savannah, 41 Ga. 331; Cooley on Taxation, pp. 4 and 5. (2) If the city had proceeded against plaintiff or any of his assignors for a violation of its license ordinances, such suit would have been merely a civil suit for the collection of a fine. A threat to begin a civil suit does not constitute duress. City of Kansas v. Clark, 68 Mo. 588; Kansas City v. Neal, 122 Mo. 234; St. Louis v. Vert, 84 Mo. 204; Ex parte Hollowedell, 74 Mo. 395; Lolglazier v. Salem, 61 Ind. 445; Hines v. Board of Comm., 93 Ind. 266. (3) The assignments by the various saloon keepers and others to the plaintiff of their claims for money extorted from them by duress and threat of false imprisonment can not be upheld under decisions in this State. There is only one kind of action based on torts that is assignable in this State, and that kind is those causes of action which survive and pass to the personal representative of the decedent as assets, or continue as liabilities against such representatives. Snyder v. Railroad, 86 Mo. 613.

WILLIAMS, J.—Our attention is first called by this record to a jurisdictional inquiry.

Plaintiff sued for $2,682.50 and, upon the trial, obtained judgment for $1,218.60. There are cross appeals in the case. Plaintiff complains that the circuit court erred in refusing to award him the full amount of his demand. The city upon the other hand, makes the objection, that he was not entitled to recover anything. This, we think, opens up the whole case, and the entire sum in controversy between the parties is the "amount involved."

If the *plaintiff* alone had appealed, the difference between his claim and the judgment rendered in his favor

would be the criterion by which to determine our jurisdiction. "The remainder for which plaintiff failed to get judgment would be the amount in controversy." [Hilton v. Dickinson, 108 U. S. 165; Finkelnburg's Missouri Appellate Practice, 26.] If, however, *defendant* was the only complaining party, the amount of the judgment against it would control.

Here we have both parties appealing. Still there is only *one* case. Both appeals being in the *same cause,* must be heard by the same court. [Ellis v. Harrison, 104 Mo. loc. cit. 280.]

The real amount involved, at this time, in the controversy between the parties to this record which must be determined by the appellate court, is the entire sum sued for, to wit, $2,682.50.

It was said by BRACE, J., in State ex rel. Lingenfelder v. Lewis, 96 Mo. loc. cit. 148: "The amount in dispute by which the jurisdiction of the appellate court is to be determined is not necessarily fixed by the amount of the judgment appealed from [State ex rel. v. Court of Appeals, 87 Mo. 569], nor by the amount claimed in the cause of action sued upon [Kerr v. Simmons, 82 Mo. 269], but *by the amount that remains in dispute between the parties, on the appeal, and subject to determination by the appellate court of the legal questions raised on the record* . . . . . . . Two amounts were in dispute in this case in the *trial* court, the amount claimed by the plaintiffs on their cause of action, and the amount claimed by defendant on its counterclaim . . . . . . . The finding of the circuit court in defendant's favor on the counterclaim, *the plaintiffs not having appealed,* eliminates that dispute from the case."

The plain inference is that, if plaintiffs *had* appealed, the item mentioned would not have been eliminated, but would have entered into the computation in determining

"the amount involved" in the case as it stood in the appellate court.

Both parties appealed in Reichenback v. United Masonic Benefit Association, 47 Mo. App. 77. There were two counts in plaintiff's petition. The first was to recover $1,000 and the second was for $2,000. There was a verdict for defendant upon the first count and for plaintiff for the full amount sued for in the second count. The plaintiff and defendant each took an appeal from the judgment. The St. Louis Court of Appeals, being in doubt about its right to hear the matter, certified it to this court. Plaintiff in the meantime dismissed *her* appeal.

BARCLAY, J., in disposing of the case, said: "Here the appeal from the judgment against defendant, based upon the finding upon the second count, is the only matter for examination, and defendant alone complains of that judgment. In this state of the record, we are of the opinion that the amount involved is to be determined as though defendant alone had originally appealed. The finding upon the first count has become a final adjudication and is no longer 'in dispute' by either party." [Reichenback v. United Masonic Ben. Ass'n, 112 Mo. 25.] If both appeals had remained a different question would have been presented.

We hold that when there are cross appeals *in the same case,* and the aggregate amount in dispute in both appeals exceeds $2,500, the Supreme Court has jurisdiction. In other words, that the amount really in controversy between the parties, *as the case stands in the appellate court,* and which will be concluded by the judgment to be rendered by such court in disposing of the appeals of both parties, furnishes the test of appellate jurisdiction.

II. We come now to a consideration of the case on its merits. We will first examine the complaint of Kansas

City, that the court erred in rendering any judgment whatever against said city.

Three reasons are assigned for this contention. They will be taken up in the order in which they are submitted in the brief.

1. Kansas City, on the fourth of December, 1889, attempted to extend its corporate limits. Its action in that behalf was without authority of law and void. A decision of this court to that effect was announced on the nineteenth of January, 1891. In the meantime, Albert Lange, Joseph Stephens, Augustus Hahn and plaintiff were engaged in business, as saloon keepers, outside of said city, but within the territory which it attempted to include within its borders. The officers of the city demanded a license tax from them. They at first refused to pay it. They did not comply until defendant's officers had threatened to arrest them and close their places of business, unless they did so. Lange, after he had taken out his license, was in fact arrested for failing to pay more promptly. Stephens was taken in charge by the police, and secured his release by paying the tax. Lange, Hahn and Stephens assigned to plaintiff their claims against the city for the money so obtained from them. This suit is to recover said money and also the sums paid by a number of other parties, who transferred their demands to plaintiff.

The court declared the law to be that, if defendant claimed the right to collect the taxes, and threatened the arrest of the parties unless the same were paid, and that it had the ability to carry the threats into execution, and that any of the sums sued for were paid under those circumstances, then said payments were not voluntary and might be recovered back.

Judgment was rendered against the city for the amounts exacted from Hahn, Lange, Stephens and plaintiff, and it is of this that the defendant complains.

It is argued that after the attempt to extend the limits of the city over the territory, in which plaintiff and his assignors were doing business, and before the invalidity of that attempt had been judicially determined by this court, the city established a *de facto* government in the country embraced in the extended boundaries. Police and fire protection were furnished the annexed district and, it is said, these taxes were expended in that manner and for other municipal purposes therein.

The argument is advanced that, "as a completely organized *de facto* government in the newly annexed territory, the city had the right to collect the licenses in question, and to use duress to make the collection."

We can not give our assent to this proposition. Kansas City was a municipal corporation of this State, and its boundaries were defined by law. It had no authority to exercise any control over territory beyond its borders. The effort to extend its limits was absolutely null, and conferred no rights upon the city. The matter stood as if no such steps had ever been taken in that direction. It was said, by BRACE, P. J., in Couch v. Kansas City, 127 Mo. loc. cit. 438, upon this subject, "Prior to this extension, the lands of the plaintiff and his assignors were without the limits of the city, and not subject to taxation for city purposes, *and the extension being illegal and void, the taxes thus assessed and paid were illegal."*

Rules applicable to *de facto* governments have no place in this suit. The district sought to be taken within the city was under the jurisdiction and subject to the laws of this State. Our cities can not acquire territory "by conquest" and claim the rights of a *de facto* government therein. This is a policy of *municipal* "expansion" "not in harmony with the Constitution and laws of Missouri." The matter stands, from a legal standpoint, precisely as if Kansas City, without any attempt to make the extension, had exacted this money

from plaintiff and his assignors. The fact that it assumed a jurisdiction which it did not possess, and attempted to extend its municipal control to a place and over persons, when it had, under the laws of the State, no rightful authority so to do, can not give any legal force or validity to its acts and constitutes no defense to this suit. [Couch v. Kansas City, *supra.*]

Any other rule would make it within the power of any city or town to assume dominion over the adjacent territory until prohibited from so doing by the courts, and then set up the claim that its acts in the meantime were entirely proper. It would make that which was void *ab initio,* of full force until there was a judicial announcement of its invalidity. This position can not be maintained.

2. The next point made by the city is, that a prosecution under its ordinances is merely a *civil* proceeding, and a threat to bring a *civil suit* can not constitute duress. It is urged that payments made under the circumstances detailed in the evidence, were not involuntary, and can not be recovered.

It will be remembered that the trial court, under the declaration of law given for plaintiff, must have found as a fact, that the city not only claimed the right to collect these license taxes, but through its officers threatened the arrest of the parties unless the same were paid, and that it had the ability to carry that threat into execution and further that the payments were induced by those means. There was testimony to the effect, not only that plaintiff and his assignors were *threatened* with arrest but that one or two of them were *actually* taken into custody by the police for nonpayment, and they were told by defendant's officers that they must close their business or take out the required licenses.

It was very recently held by this court in an opinion written by MARSHALL, J., that "a proceeding in a police court

to punish a violation of a municipal ordinance by a fine or imprisonment, is *civil in form* and *quasi-criminal in character*. [Ex parte Hollwedell, 74 Mo. 395; Ulrich v. St. Louis, 112 Mo. 138; St. Louis v. Weitzel, 130 Mo. 600; Kirkwood v. Cairns, 44 Mo. App. 88.] It is governed by the rules of pleading applicable to civil cases, but if it was solely civil no fine or imprisonment could be inflicted. It is therefore a *quasi*-civil and criminal action. Partaking of some of the features of each, its similitude to either is not complete. In pleading, it is more nearly like a civil action, *but in its effects and consequences* it more nearly resembles a *criminal* proceeding." [Stevens v. Kansas City, 146 Mo. loc. cit. 465.]

It can not be said therefore that these payments were induced by a mere announcement, on the part of those speaking for the city, of their intention to bring a civil suit against the parties; and the rules applicable in such cases have no bearing upon the one before us. The case of Colglaizer v. The Town of Salem, 61 Ind. 445, cited by the city, is not in point for that reason.

The court there held that the money sought to be recovered was voluntarily paid. It was said: "In the case before us, the town of Salem had adopted an ordinance imposing penalties for retailing without license. The mode of enforcing the ordinances of municipal corporations is by suit for the penalty incurred by breaches thereof." It nowhere appears from the opinion that arrest and imprisonment might have followed the refusal to pay, or that the alternative was offered to comply with the demand for the license tax or quit business.

Here plaintiff and his assignors were threatened by defendant's officers with immediate arrest, and the further threat was made that they must close their business or pay the license fee demanded of them.

The city's agents had power to carry said threats into

execution, and gave practical·demonstration of their ability so to do by taking one or more of the parties into. actual custody. This presented a very different state of affairs from the mere menace of a civil suit to recover a penalty.

In Westlake & Button v. St. Louis, 77 Mo. 47, suit was brought to recover overcharges .in water licenses collected by the city from the plaintiff. The defense of voluntary payment was interposed. The court held that it could not be sustained. SHERWOOD, J., speaking for the court said: "The city officials possessed the power, and they threatened to exercise it, of cutting off the water supply of Westlake & Button unless the illegal demands already mentioned met with immediate compliance. If this conditional threat had been carried into execution, the foundry of the applicants for license would have been forthwith closed, and from sixty to one hundred hands thrown out of employment. The payment of the excess was, therefore, as much under compulsion, *as if the city officials had been armed with a warrant for the arrest of the person or the seizure of goods, in which case but one opinion would be entertained as to the nature of the payment if made.*"

The court, speaking through WAGNER, J., in Wolfe v. Marshall, 52 Mo. 171, used this language: "There are many cases on the subject, and the conclusion clearly deducible from them is, that a payment of money upon an illegal and unjust demand, where the party is advised of all the facts, can only be considered involuntary when it is made to procure the release of the person or property of the party from detention, or *when the other party is armed with apparent authority to seize upon either* and the payment is made to prevent it."

Judge DILLON, in his work on Municipal Corporations, volume 2, section 940, lays down the following as prerequisites to the maintenance of a suit to recover back taxes collected by the city: "1. The authority to levy the tax,

Douglas v. Kansas City.

or to levy it upon the property in question, must be wholly wanting, or the tax itself wholly unauthorized, in which cases the assessment is not simply irregular but absolutely void. 2. The money sued for must have been actually received by the defendant corporation, and received by it for its own use, and not as an agent or instrument to assess and collect money for the benefit of the State or other public corporation or person. 3. The payment by the plaintiff must have been made upon compulsion; as for example, to prevent the immediate seizure of his goods *or the arrest of the person* and not voluntarily."

If the officers and agents of a city exact in its behalf an unauthorized and illegal license tax, under threat of immediate arrest in case of refusal, and they are clothed with power to carry their threat into execution at once, a payment made to avoid such consequences is not voluntary and the money may be recovered back. [Maguire v. State Savings Ass'n, 62 Mo. 344; Swift Co. v. U. S., 111 U. S. 22; Claflin v. McDonough, 33 Mo. loc. cit. 415; Westlake & Button v. St. Louis, 77 Mo. 47; Wolfe v. Marshall, 52 Mo. 167.]

This point is ruled against defendant.

3. The city further contends that the claims are not assignable, and plaintiff can not recover upon those transferred to him. This is based upon the theory that the demands arise out of a tort, and are of such a character that they would not survive or pass to the personal representatives as assets, and hence, under our statute, can not be assigned.

Beach on Public Corporations, volume I, section 230, says that the liability of the city to refund taxes illegally collected arises out of an implied contract. "The law presumes a contract on the part of the corporation to repay the taxes to the rightful owner, if the conditions are such that the municipality has not equitably a right to retain the money collected as taxes. The money thus received is considered

in law to be money had and received for the rightful owners, the taxpayers, and can be recovered by them in an action in *assumpsit,*" etc.    See, also, 2 Dillon on Mun. Corp. (4 Ed.), sec. 939.

While the objection does not seem to be well founded, yet we are precluded from making an authoritative ruling upon it.    It was stipulated in the trial court "that the various assignments of claims, as set forth in plaintiff's petition, were for a valuable consideration *and that the plaintiff is the bona fide owner thereof.*"    No question of the assignability of the claims was up for decision in the trial court. It was agreed that the plaintiff was "the *bona fide* owner thereof."    The case was tried by both parties upon that theory, and we must so review it here.    [Kelly v. Thuey, 143 Mo. loc. cit. 437; Walker v. Owen, 79 Mo. 563; Minton v. Steele, 125 Mo. 181.]

We do not find that defendant has any ground to complain of the judgment.

III.    It now remains for us to examine the errors assigned by *plaintiff* in support of *his* appeal.

A number of other parties, who were doing business in the district attempted to be annexed to Kansas City, paid license taxes to said city.    *They* also assigned *their* claims to plaintiff and he objects to the action of the trial court in refusing to render judgment in his favor for them.

No proof was offered of the circumstances under which these payments were in fact made.    The only evidence presented in regard to the matter was as to the practice of the license inspector.    He stated, in a general way, that he visited the people engaged in business in that territory, got their names and reported them to the proper officer so that they might be prosecuted if they failed to pay.    Blank notices were sent to all parties requiring them to take out licenses, and that they would be arrested if they failed to

do so within the time named in such notices.    This was the general character of the evidence.    It is needless to go more into detail.

The burden was on plaintiff to make out his case.    This was not done by simply showing that the taxes were paid to the city.    They may have been voluntarily so paid, and in that event, there can be no recovery.    While it was the general practice of the license inspector to notify parties doing business in that territory to take out license, yet it does not follow that plaintiff's assignors waited for such notice, much less that they did not pay until there was a threatened arrest. It does not even appear that *they* were so much as called on for the money.    For aught shown by the testimony, *they* may have believed the extension *valid,* been *satisfied* with it, and *voluntarily* paid their taxes.    [Couch v. Kansas City, 127 Mo. 436.]

Plaintiff's evidence failed to make out a case as to these items.    It therefore becomes unnecessary to consider any other questions concerning them.

The case was properly decided by the circuit court and the judgment is affirmed.

All concur.