FREUND MOTOR COMPANY, A CORPORATION, RESPONDENT, v. ALMA REALTY & INVESTMENT COMPANY, A CORPORATION, APPELLANT.— 142 S. W. (2d) 793.

St. Louis Court of Appeals. Opinion filed July 3, 1940.

Motion for rehearing overruled September 13, 1940.

Writ of Certiorari denied November 9, 1940.

*Dubail, Judge & Winter* and *Robert G. Winter* for appellant.

*Arthur J. Freund* for respondents.

SUTTON, C.—This is an action in equity, commenced on March 3, 1937, for a declaratory judgment construing a lease and for the recovery of rents paid under the lease. The lease was executed on December 18, 1934, by defendant, Alma Realty & Investment Company, to the Edwards Chevrolet Company, demising a certain automobile salesroom, garage, and machine shop, located in the City of St. Louis, and known as 3806 South Kingshighway Boulevard, for a term commencing on March 23, 1935, and ending on March 31, 1940, "at a rental based upon an amount equal to one per cent of the

total gross sales made by the lessee from all sources during the term of this lease, such rental to be payable on the 10th day of each month for the sales made during the previous month." The lease also gives the lessee an option to renew the lease for an additional term of five years on condition that in addition to the rent specified the lessee shall pay the lessor an additional sum of $50 per month, that is to say, that the monthly rental for the renewal period shall be based upon one per cent of the gross sales plus the sum of $50 per month.

After the execution of the lease, the Edwards Chevrolet Company conducted the business of a Chevrolet automobile dealer in the leased premises, selling at retail to the public Chevrolet automobiles, in conjunction with a repair shop and Chevrolet automobile service facilities, and general repair shop for all makes of automobiles.

On October 29, 1935, plaintiff purchased the business of the Edwards Chevrolet Company in the leased premises, including all of the right, title, and interest of the Edwards Chevrolet Company in the lease, and the lease was duly assigned to plaintiff by said Edwards Chevrolet Company. Upon the assignment of the lease an agreement in writing was entered into between plaintiff and defendant whereby defendant agreed and consented to the assignment with an amendment of the lease providing that the option given the lessee to renew the lease for a term of five years was on condition that the annual rental for the renewal period should be a minimum amount of $5400 in the event one per cent of the gross sales should not equal that sum, the lessee agreeing to use the demised premises only for the purpose of conducting the Chevrolet automobile agency.

The Edwards Chevrolet Company occupied the premises from March 23, 1935, to October 19, 1935, and during that period paid defendant a rental equal to one per cent of the total gross sales made by it, such one per cent of sales being computed by taking one per cent of the sale price of new cars to customers regardless of whether payment by the customer was made in cash or by cash and a used car, and by taking one per cent of the sale price of used cars to customers regardless of whether payment by the customer was made in cash or by cash and a used car.

The rents paid by the plaintiff on sales made by it during the period from October, 1935, to September 30, 1938, amounted to $11,937.43. These rents were paid on the basis of one per cent of the total gross sales calculated in accordance with defendant's construction of the lease, that is, that the term "total gross sales," as applied to the sale of a new automobile, means the sale price of the new automobile, without deducting the amount of the allowance made for a used automobile taken in trade on the sale price of the new automobile, and a like percentage on the resale of the used automobile so taken in trade. There was thus an overpayment of rents in the amount of $3357.67 according to plaintiff's construction of

the lease, that is, that the term "gross sales," as applied to the sale of a new automobile is the sale price less the amount of the allowance made for a used automobile taken in trade on the sale price of the new automobile, so that defendant is entitled to one per cent on the sale price less the amount allowed for a used car taken in trade, and one per cent on the amount of the resale of the used car similarly determined.

The court found the issues in favor of plaintiff, construed the lease in accordance with plaintiff's construction of it, found that plaintiff had overpaid defendant $3357.67, and that plaintiff was entitled to interest thereon in the amount of $48.69, and gave judgment accordingly. Defendant appeals.

The bone of contention here is whether or not defendant is entitled to one per cent on the sale price of cars without deduction for allowances made for used cars taken in trade, or is entitled only to one per cent on the sale price less allowances made for used care taken in trade.

The term "sale" as used by the authorities is not a word of fixed and invariable meaning, but may be given a narrow or broad meaning according to the connection in which it is used. The term is ordinarily defined as a contract to give and to pass rights of property for money, which the buyer pays or promises to pay to the seller for the thing bought or sold, or as the exchange of goods or property for money paid or to be paid, or as the transfer of the absolute or general property in a thing for a price in money. [Peycke Bros. v. Ahrens, 98 Mo. App. 456, 72 S. W. 151; State v. Wingfield, 115 Mo. 428, 22 S. W. 363; Wheless v. Meyer-Schmidt Grocer Co., 140 Mo. App. 572, l. c. 585, 120 S. W. 708; Loud v. St. Louis Union Trust Co. (Mo.), 281 S. W. 744, l. c. 755; Martin v. Ashland Mill Co., 49 Mo. App. 23.] Of course, the term is broad enough to include the transfer of property for any sort of valuable consideration, as, for example, the transfer of property for property, so far as concerns the legal effect of the tansaction, for, whether the transaction is the transfer of property for money or for some other valuable consideration, the legal effect is the same. [Kennerly v. Somerville, 68 Mo. App. 222; Martin v. Ashland Mill Co., 49 Mo. App. 23.] However, the term, as ordinarily defined in the books and as popularly understood, means the transfer of property for money paid or to be paid, and we think it is in this sense that the term is used in the lease with which we are here concerned. The taking of a used car in trade on the sale price of a new car is *pro tanto* an exchange or transfer of property for property, not a transfer of property for money paid or to be paid. This results in a reasonable construction of the lease and arrives at the manifest intention of the parties. The payment of the percentage on the amount of the allowance made on a used car when it is traded in and again when it is resold is to that extent a double payment on

what is realized on the two transactions. For example, if the sale price of a new car is $1300 and an allowance of $300 is made on a used car traded in and the used car is subsequently resold for $300, the amount realized on the two transactions is $1300, but if the percentage is paid on the sale price of $1300 on the new car and is paid again on the resale price of $300 on the used car, the percentage is thereby paid on $1600, not on $1300, the amount realized on the two transactions.

State v. Hallenberg-Wagner Motor Co. (Mo.), 108 S. W. (2d) 398, relied on by defendant, is not controlling here. In that case the court had under construction our sales tax act, 1933-1934, Extra Session Laws, pp. 155-166. That act gives its own definition of the term "sale." It defines the term as "any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a valuable consideration." It defines the term "gross receipts" as "the total amount of the sale price of the sales at retail including any services that are a part of said sales made by the businesses herein referred to, capable of being valued in money, whether received in money or otherwise." It defines the term "sale at retail" as "any transfer of the ownership of, or the title to, tangible personal property to the purchaser, for use or consumption . . . for a valuable consideration." There are no such definitions in the lease under review here.

Defendant invokes the rule that where a lease is ambiguous the practical construction put upon it by the parties themselves as evidenced by their acts and conduct will ordinarily be adopted by the courts. Over against this plaintiff invokes the rule that where a lease is ambiguous the construction most favorable to the lessee will be adopted.

However, there was no practical construction of the lease by plaintiff here as defendant construes it. It is true plaintiff paid the rents for a time according to defendant's construction of the lease, but it did this under protest, always contending that the rents should be paid in accordance with its construction of the lease. It knew nothing of the practical construction put upon the lease by the original parties. It was not bound by their construction. A lease, such as this, is a muniment of title to a chattel real. When it is lawfully assigned, the assignee takes it as it is written, unaffected by the construction put upon it by the original parties of which the assignee has no knowledge. Moreover, plaintiff and defendant in this case executed an agreement whereby the parties agreed upon a material modification of the lease, defendant consenting to the assignment of the lease, and plaintiff agreeing to perform all the covenants, terms, and conditions of the lease as modified. This virtually amounted to the making of a new lease between plaintiff as lessee and defendant as lessor, so that the lease as modified must necessarily be construed

according to its terms without regard to the practical construction put upon the lease by the parties to it as originally written.

Defendant invokes the maxim *expressio unius est exclusio altermus,* because the lease expressly provides that "the term 'gross sales' shall not include cars sold at cost to other Chevrolet dealers." We do not see how that maxim is brought into operation by such provision of the lease. The provision does not undertake to define the term "gross sales," or enumerate sales included within the term, but merely excludes from the term sales at cost to other Chevrolet dealers. Such sales are not in the same class as sales made to the public generally in the usual course of business.

We conclude that the court below correctly construed the lease.

Defendant contends that the overpayments of rents by plaintiff may not be recovered because such overpayments were voluntarily made. The lease contains a provision for its forfeiture for failure to pay rents when due. Plaintiff made prolonged and continuous but unsuccessful efforts to get defendant to accept the rents calculated in accordance with plaintiff's construction of the lease. Plaintiff contends that the overpayments were involuntary because made under compulsion of the forfeiture provision of the lease. This precise question has never been decided in this State so far as we are advised. However, in Emery-Bird-Thayer Dry Goods Co. v. Williams, 107 Fed. (2d) 965, l. c. 973, a case identical in principle with this case, it was ruled that overpayments of rents by the lessee were involuntary. Analogous cases, holding payments involuntary, follow: Duke v. Force, 120 Wash. 599; American Brewing Co. v. City of St. Louis, 187 Mo. 367, l. c. 377, 86 S. W. 129; Link v. Aiple Hemmelmann R. E. Co., 182 Mo. App. 531, l. c. 539, 165 S. W. 832; Wells v. Adams, 88 Mo. App. 215, l. c. 225; Brown v. Worthington, 162 Mo. App. 508, 142 S. W. 1082; Rickey v. New York Life Ins. Co., 229 Mo. App. 1226, 71 S. W. (2d) 88; Hablutzel v. Home Life Ins. Co. (Mo.), 59 S. W. (2d) 639. We do not find these cases out of accord with Ferguson v. Butler County et al., 297 Mo. 20, 247 S. W. 795; Douglas v. City of Kansas City, 147 Mo. 428, 48 S. W. 851, and Claflin et al. v. McDonough, 33 Mo. 412, relied on by defendant.

We conclude that the overpayments of rents made by plaintiff here were involuntary and therefor recoverable.

The contention of defendant that plaintiff is estopped by its conduct to maintain this action is without merit. There is an utter want of any element of estoppel resulting from plaintiff's conduct as disclosed by this record. [Brinkerhoff-Faris Trust & Savings Co. v. Horn, 83 Mo. App. 114, l. c. 120; Blodgett v. Perry, 97 Mo. 263, l. c. 272, 273, 10 S. W. 891.]

The Commissioner recommends that the judgment of the circuit court be affirmed.

594

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hughes, P. J.,* and *McCullen, JJ.,* concur; *Becker, J.,* not sitting, because absent when the cause was submitted.