**MONTGOMERY et al.**

v.

**NEVINS et al.**

No. 10245.

Court of Civil Appeals of Texas.

Austin.

June 30, 1954.

Rehearing Denied July 21, 1954.

Golden, Croley, Howell & Johnson, John L. Roach, Dallas, for appellants.

McMahon, Springer, Smart & Walter, Smith, Eplen, Bickley & Pope, Scarborough, Yates, Scarborough & Black, Abilene, for appellees.

GRAY, Justice.

Appellants (children and successors in interest of J. A. Montgomery, deceased) filed this suit in statutory form of trespass to try title to recover title and possession of 11/12ths of an undivided 1/4th mineral interest in 1,280 acres of land in Runnels County. Appellees answered by a general denial, pleas of not guilty, limitation of three, five and ten years, estoppel, and bona fide purchases for value without notice of defects of title.

At a nonjury trial a judgment that appellants take nothing was rendered.

On November 21, 1927, Mrs. Civilia Earnest, a widow, conveyed to J. A. Montgomery an undivided 1/4th interest in and to the oil, gas and other minerals in, on and under 1,280 acres of land in Runnels County. This conveyance was by a general warranty deed containing a full description of the 1,280 acres of land and its sufficiency as such conveyance is not questioned by any of the parties.

J. A. Montgomery died, intestate, May 27, 1932, seized and possessed of the above mineral interest, together with a farm in Bee County, a business house, a business lot and a home in San Marcos. He left as his surviving heirs twelve living children, all adults, Mrs. Montgomery, a twin sister of Mrs. Civilia Earnest, having died in 1922.

It appears that no administration was had on the estate of J. A. Montgomery.

On June 1, 1932, eleven of the children of J. A. Montgomery, deceased, executed to their brother, Clifford M. Montgomery, a power of attorney

"* * * to take charge of, manage, and look after the estate left to us upon the death of our father, J. A. Montgomery, and our mother, Mrs. Cecilia Montgomery, of Hays County, Texas, both now deceased, and to contract for the sale of any land or any interest in lands belonging to us which we inherited from either our father or mother, wherever the same may be situated, and especially any land in Hays County, Texas, which we may have inherited from either our said father or mother, and to sell the same upon such terms, cash, or credit, or both, as to him may seem advisable, and to make and deliver such deeds or assurances of title, with or without warranty, as he may deem to our best interests, and we further authorize our said agent and attorney-in-fact to mortgage any of said real estate by giving mortgages or deeds of trust or other liens thereon which he may deem advisable, and for such length of time and upon such terms and conditions as he may deem for our best interests, and to sell and transfer any notes or liens, and to make such notes, bonds, or other evidences of indebtedness, in our names as he may deem necessary, and to receive any money or monies which may be due us, or any of us, endorse any notes, bonds, or checks, and collect any rents due us, and to deposit the money which he may collect in any bank or banking house and to draw checks thereon and other-

wise handle and dispose of same; and to sell and contract for the sale of any personal property, and to execute bills of sale therefor upon such terms as he may deem advisable, and to sell and transfer any notes, stocks or other personal property, giving and granting unto our said agent and attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully and to all intents and purposes, as we might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that our said attorney or his substitute shall lawfully do or cause to be done, in the premises by virtue hereof."

On June 27, 1932, Clifford M. Montgomery acting for himself individually and under the power of attorney

"* * * for and in consideration of the sum of $1.00 to each of us in hand paid by Mary Rylander * * * the receipt of which is fully acknowledged, do by these presents, bargain, sell, release and forever quitclaim unto the said Mary Rylander, her heirs and assigns, all our right, title and interest in and to that certain lot, tract or parcel of land lying and being situated in Runnels County, Texas, containing 1280 acres of land granted by the State of Texas to William Fairfax Gray, assignee of C. G. W. Noffe by Patent No. 69, Vol. 8, dated September 20, 1855, said land being on the northern waters of the Colorado about 15 miles south 74 degrees west from Bald Eagle Point of the dividing ridge, and same is known as Survey No. 463, and is more fully described in a mineral deed executed by Mrs. Civilia Earnest, a widow, to J. A. Montgomery, dated November 21, 1927, and recorded in Vol. 140, Page 44, of the Deed Records of Runnels County, Texas.

"To have and to hold the said premises, together with all and singular the rights, privileges and appurtenances thereto in any manner belonging, unto the said Mary Rylander, her heirs and assigns forever, so that neither we, the grantors herein, nor our heirs, nor any person or persons claiming under us shall, at any time hereafter, have, claim or demand any right or title to the aforesaid premises or appurtenances, or any part thereof, *and we hereby cancel and hold for naught, the above-mentioned mineral deed from Mrs. Civilia Earnest to J. A. Montgomery hereinabove described.*" (Italics added.)

Clifford M. Montgomery and two of his brothers died prior to the filing of this suit on May 11, 1953, and one brother, J. E. Montgomery, died August 1, 1953. The living children and the successors in interest of the deceased children of J. A. Montgomery, except Clifford M. Montgomery, are appellants.

Appellees claim title through and under Mary Rylander, the owner of the surface of the 1,280 acres.

The parties stipulated that Mrs. Civilia Earnest is the common source of title.

It is appellants' contention that the above quitclaim deed is void. Under it Clifford M. Montgomery conveyed only such title and rights as he was authorized to convey by the power of attorney. In any event the power of attorney and the quitclaim deed were a part of appellees' chain of title and constituted notice to appellees of the authority of Clifford M. Montgomery to convey the property. Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 940; 43–B Tex.Jur., Sec. 761, p. 72. And this is true even though only an undivided interest was conveyed. 43–B Tex.Jur., Sec. 759, p. 71.

It appears that the above quitclaim deed was the only instrument executed by Clifford M. Montgomery relative to the estate of either J. A. Montgomery or Mrs. Montgomery.

The only evidence as to the consideration paid to Clifford M. Montgomery by

Mary Rylander is the recitals in the quit-claim deed and the fact that the deed carried a cancelled fifty cent internal revenue stamp. Five of the children of J. A. Montgomery testified at the trial. It is not shown why the other living children did not testify. Those testifying said that J. A. Montgomery claimed the mineral interest at his death, that they did not know of the quitclaim deed until shortly before, or just after, the filing of this suit and that they did not receive any part of the consideration recited in the deed. There was no evidence of any necessity or desire to settle the mineral interest. These facts are relevant to show the absence of any necessity or understanding to settle or relinquish the mineral interest in any manner other than by a sale thereof.

 The power of attorney authorized Clifford M. Montgomery to sell the mineral interest for a consideration of "cash, credit or both." If such a sale was not in fact made then the quitclaim deed did not pass the title to the interest and was wholly inoperative on appellants' title. Hunter v. Eastham, 95 Tex. 648, 69 S.W. 66. In determining whether the conveyance as made was authorized by the power of attorney the power is to be strictly construed. Gouldy v. Metcalf, 75 Tex. 455, 12 S.W. 830, 831, wherein the Court said:

" * * * the established rule of construction limits the authority derived by the general grant of power to the acts authorized by the language employed in granting the special powers. 'When an authority is conferred upon an agent by a formal instrument, as by a power of attorney, there are two rules of construction to be carefully attended to: (1) The meaning of general words in the instrument will be restricted by the context, and construed accordingly. (2) The authority will be construed strictly, so as to exclude the exercise of any power which is not warranted either by the actual terms used, or as a necessary means of executing the authority with effect.' Ewell's Evans, Ag. 204, 205;

Reese v. Medlock, 27 Tex. [120] 123, 124."

Also see 2 Tex.Jur., Sec. 57, p. 454.

 The authorities in Texas and elsewhere appear to agree that even though the power authorizes a sale on "such terms as may seem advisable" a sale for the benefit of the principal is intended and a transfer of the property without a present consideration inuring to the principal is unauthorized. Brown v. Laird, 134 Or. 150, 291 P. 352, 73 A.L.R. 877, and annotations at page 884, et seq.

 In any event authority was not granted to Clifford M. Montgomery to "cancel and hold for naught" the mineral deed. Lessee of Clarke v. Courtney, 5 Pet. 319 [348], 8 L.Ed. 140 [151]. It then remains to be determined whether the quitclaim deed in fact constitutes a sale within the meaning of the power. In this respect the term "sale" does not have the same meaning as it does when used to denote a conveyance of property from one individual to another by the usual deed. When there is no price specified in the power of attorney, the authority is to sell for the market price, or if there is no market price then for a reasonable price. Restatement, Agency, Sec. 61. We take this to mean such price as will reasonably compensate the owners for the value of the property conveyed. While the trial court found there was no evidence as to any actual value of the minerals, it must be conceded that the same was property and in that sense there was present, at least, the opportunity to derive future profits from it. We think however that value in this sense is not determinative of the question before us. We think it is conclusively shown that the mineral interest was treated as property and that a sale only was authorized.

 The term "sale" as used by the authorities does not appear to have a fixed or invariable meaning but it is to be interpreted in accordance with the manifest intention of the parties. Texas Farm Bu-

reau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101. As ordinarily understood it means the transfer of property for a consideration in money paid or to be paid. Frost v. Erath Cattle Company, 81 Tex. 505, 17 S.W. 52. Freund Motor Co. v. Alma Realty & Investment Co., 235 Mo.App. 587; 142 S.W.2d 793. As applied to the authority of an agent, in 2 C.J.S., Agency, § 114 (cc) p. 1332, it is said that a power to sell real estate contemplates a sale for money only and does not contemplate a conveyance without consideration, or for a merely nominal consideration.

In Strong v. Strong, 128 Tex. 470, 98 S.W.2d 346, 109 A.L.R. 739, the Court, in considering the question of what constitutes an innocent purchaser, used the term "valuable consideration." In 55 Am.Jur., Secs. 736, 737, pp. 1102–1103, a distinction is made between a good consideration and a valuable consideration and it is said that "the question is not whether the consideration is adequate but whether it is valuable."

■ The facts that the children of J. A. Montgomery were jointly interested in the several pieces of property left to them at his death and that they executed to Clifford M. Montgomery the power of attorney, supra, clearly manifests their intention that it be disposed of for a reasonable price inuring to their benefit. Certainly it cannot be logically argued that acting under the power of attorney he could have given the property away or conveyed it for a nominal consideration, which in Huntsman v. Huntsman, 56 Utah 609, 192 P. 368, the Court held amounted to a gift.

Applying the tests of the authorities, supra, to the power of attorney and the quitclaim deed before us we think the deed was unauthorized and is therefore void. And those instruments being links in appellees' title they cannot sustain their defense of innocent purchasers. Lumpkin J. Adams, 74 Tex. 96, 11 S.W. 1070; Strong v. Strong, supra; 14 Tex.Jur., Secs. 194 and 193, pp. 981 and 980; 36 Tex.Jur., Sec. 49, p. 474.

The defense of estoppel cannot be sustained. Appellants who testified said they knew nothing of the conveyance until about the time or just after the suit was filed. There is no evidence to dispute this testimony. Zimpelman v. Keating, 72 Tex. 318, 12 S.W. 177. In Lobley v. Gilbert, 149 Tex. 493, 236 S.W.2d 121, 123, the Court said:

"This court fully recognizes that time should heal and not destroy titles, and that, therefore, much weight should be accorded ancient instruments which have not been attacked over a long period of time. We recently gave recognition to that rule in Miller v. Fleming [149 Tex. 368], 233 S.W.2d 571. More impelling reasons exist for liberality in applying that rule in a case where possession would be disturbed by a failure to apply it than in a case, like the instant one, where the only title involved is a small interest in a mineral estate over which, during a long period of time, the parties have exercised no control, and their status would not be disturbed by a denial of its application."

In their oral arguments the parties appeared to agree that if it be determined that the quitclaim deed is void then all other issues in the case would become immaterial. For this reason we have mentioned with only citation of authorities other points in the brief.

The judgment of the trial court is reversed and judgment is here rendered that appellants recover title and possession of the 11/12ths of the undivided 1/4th mineral interest sued for.

Reversed and rendered.

On Appellees' Motion for Rehearing.

■ In their motion for rehearing appellees direct our attention to an instrument dated July 26, 1937, executed by appellant Lula Carlton and her husband E. H. Carlton, correcting the acknowledgment of Lula Carlton to the power of attorney to Clifford M. Montgomery, rati-

fying the said power of attorney and the quitclaim deed to Mary Rylander.

In their reply to appellees' motion appellants confess that Lula Carlton is precluded from any recovery herein.

To the extent above noted appellees' motion for rehearing is granted and otherwise it is overruled.

Our former judgment is accordingly corrected. The judgment of the trial court as to Lula Carlton is affirmed, in all other respects that judgment is reversed and judgment is here rendered that appellants (except Lula Carlton) recover title and possession of $^{10}\!/_{12}$ths of the undivided $\frac{1}{4}$th mineral interest sued for.

Appellants, except Lula Carlton, shall recover their costs.

Former judgment corrected.

Motion in part granted and in part overruled.