A. H. GOOD, Appellant, v. A. P. ERKER, Respondent.

St. Louis Court of Appeals, February 4, 1913.

1. **CONTRACTS: Rules for Interpretation.** The intention of the parties to a contract controls its interpretation, and where the language of the contract is free from ambiguity, such intention must be gathered therefrom.

2. ————: ————. Words employed in a contract are presumed to have been used in their usual and ordinary sense, and, unless there is something to indicate a contrary intention, they will be so interpreted.

3. **DEFINITIONS: "Sell."** The word "sell" means, in its usual and ordinary sense, the actual disposal or alienation of property for cash or its equivalent.

4. ————: **"Price."** The word "price" means, in its usual and ordinary sense, a consideration in current money given for the purchase of a thing sold.

5. **REAL ESTATE BROKERS: Right to Commission: What Constitutes Sale.** The owner of an interest in a tract of land who entered into a contract with a real estate broker whereby he agreed that, in the event he should *sell* certain property for a sum mentioned or any other *price* he might accept, he would pay the broker a certain sum, was not liable to the broker upon his conveying the property to a corporation which was organized to take and hold the same and in which he and the other owner had a stock interest proportioned to their interest in the property, inasmuch as the transfer of the title to the corporation was not a *sale* for a *price*, within the meaning of the contract.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*Edward W. Foristel* for appellant.

(1) A sale of land is the actual transfer of title from grantor to grantee by appropriate instrument of conveyance. Ide v. Leiser, 10 Mont. 5. (2) A sale in the ordinary sense of the word is a transfer of

property for a fixed price in money or its equivalent. Iowa v. McFarland, 110 U. S. 471. (3) To constitute a sale there must be 1st, parties competent to contract; 2nd, mutual assent; 3rd, a thing the absolute or general property of which is transferred from the seller to the buyer; 4th, a price in money paid or promised. Benjamin on Sales (5 Ed.), page 2. (4) Price may be in money or its equivalent. Borland v. Bank, 99 Cal. 89. (5) The stock of a corporation is a valid consideration for the transfer of property to the corporation. Gardner v. Haines, 19 S. D. 514.

*Rassieur, Kammerer & Rassieur* for respondent.

(1) (a) The cardinal rule for the interpretation of contracts is, that the intention of the parties shall be effectuated. Roseberry v. Amer. Ben. Assn., 142 Mo. App. 552; Wilson v. Wilson, 115 Mo. App. 641; Belch v. Miller, 32 Mo. App. 387; Ellis v. Harrison, 104 Mo. 270. (b) The intention of the parties is to be gathered, not alone from the words of the instrument itself, but also from the facts and circumstances which gave it birth. The form of the instrument should be considered as being in some degree expressive of the intention, but when form and substance conflict, the latter controls. Wilson v. Wilson, 115 Mo. App. 641; Wall v. Casualty Co., 111 Mo. App. 504; Donovan v. Boeck, 217 Mo. 70. (c) Persons are presumed to employ words in their usual sense, and not otherwise, unless there is something indicating a contrary intention; and words will usually be interpreted according to their popular meaning. Goode v. City of St. Louis, 113 Mo. 257; Sachleben v. Wolfe, 61 Mo. App. 28; Donovan v. Boeck, 217 Mo. 70. (2) (a) A sale is a transfer of property, from one party to another, in consideration of a certain price in current money, as opposed to barters, exchanges and gifts; it differs from a barter or an exchange in this, that in the latter the

consideration, instead of being paid in money, is given in goods or property susceptible of a valuation. 2 Rapalje & Lawrence Law Dict., p. 1144; 2 Bouvier's Law Dict. (Rawle's Rev., 1897), p. 943. (b) The word "sell," in its usual and popular sense, means a transfer to another for a price, usually to be paid in money. Webster's New International Dict. (1910), p. 1916; 5 Century Dict., p. 5480. (c) By the term "price," as a constituent element of a sale, is meant the consideration in current money given for the purchase of the property sold; if the consideration be anything, else but money, the transaction is not a sale, but is an exchange or barter. 2 Bouvier's Law Dict. (Rawle's Rev., 1897), p. 738. In its usual and common use, "price" means the amount of money given or agreed to be received for anything. Webster's New International Dict. (1910), p. 1702. (3) The transfer of the legal title of real estate to a corporation formed for the purpose of holding title thereto, and the issuance of the entire capital stock to those who owned the real estate, in the proportions of their ownership, was not a sale for a price, within the meaning of the contract. Cosgrove v. Railroad, 175 Mo. 100, 108; Benedict v. Dakin, 243 Ill. 384; Railroad v. U. S. 198 Fed. 242.

ALLEN, J.—This is an action by plaintiff, appellant here, to recover the sum of $1125 upon the contract hereinafter set out in plaintiff's petition. The petition is as follows:

### PETITION.

"Plaintiff, for his cause of action states that prior to the 11th day of November, 1908, plaintiff claimed that the defendant was indebted to him in the sum of eleven hundred and twenty-five dollars for services rendered in connection with the purchase, by the defendant of the property known as the northeast corner of Seventh and Lucas avenue; that to avoid liti-

gation, the defendant agreed with the plaintiff that when the defendant should sell the property situated at the northeast corner of Seventh street and Lucas avenue for one hundred and forty thousand dollars, or any other price which defendant may accept, that he would then pay the plaintiff the said sum of eleven hundred and twenty-five dollars, which contract was afterwards reduced to writing and is in words and figures as follows, to-wit:

" 'St. Louis, November 11, 1908.

" 'In consideration of one dollar to me in hand paid by A. H. Good, the receipt of which is hereby acknowledged and other valuable consideration, I hereby agree with said A. H. Good that whenever I sell the property situated at the northeast corner of Seventh and Lucas avenue at one hundred and forty thousand dollars, or any other price which I may accept, I agree to pay said A. H. Good the sum of one thousand, one hundred and twenty-five dollars.

" '(Signed)    A. P. ERKER.'

"Plaintiff states that the defendant did sell the property situated at the northeast corner of Seventh and Lucas avenue on or about March 5, 1910, for the consideration of ten dollars, which the defendant did accept.

"Plaintiff further states that he has duly performed all the conditions of the said contract on his part to be performed, but that the defendant has wholly failed to perform his part of the said agreement as to paying the plaintiff the amount specified in the said contract, to the damage of plaintiff in the sum of one thousand, one hundred and twenty-five dollars, for which sum he prays judgment."

The answer of the defendant is as follows:

## ANSWER.

"Now comes defendant, and for answer to plaintiff's petition herein, admits that on or about the 11th

day of November, 1908, he executed and delivered to defendant the agreement set out in the peition.

"Further answering, defendant denies that on or about March 5, 1910, he sold the property situated at the northeast corner of Seventh and Locust streets, in the city of St. Louis, Missouri, for a consideration of ten dollars or for any other price or sum; and denies that he received the sum of ten dollars or any other sum, for said real estate.

"Further answering, defendant states that at the time of the execution of the agreement set out in plaintiff's petition, to-wit, on the 11th day of November, 1908, the legal title to the real estate described in the petition was vested in defendant; that although the legal title to said property was so vested in defendant, he, in truth and in fact, held said legal title in trust for one Joseph Gummersbach to. the extent of an undivided two-thirds interest therein; and that said real estate at said time was, in fact, owned by said Joseph Gummersbach to the extent of an undivided two-thirds interest therein, and by defendant to the extent of an undivided one-third interest therein.

"That, in order to avoid the execution of a declaration of trust, and for the purpose of organizing a corporation to hold the legal title to said real estate, defendant and said Gummersbach on the 18th day of January, 1910, formed a corporation under the laws of the State of Missouri, known as the Northeast Corner Realty Company, which corporation had a capital stock of $30,000, divided into 300 shares of the par value of $100 each; that of said capital stock, defendant subscribed for 100 shares, said Joseph Gummersbach subscribed for 199 shares and Victor A. Gummersbach, a son of said Joseph Gummersbach, subscribed for one share, said latter share being subscribed and held by said Victor Gummersbach in trust for said Joseph Gummersbach.

"That after the organization of said corporation, and in accordance with the agreement and understanding of defendant and said Joseph Gummersbach, defendant conveyed said real estate to said corporation; that thereupon the stock of said corporation was issued to defendant and said Gummersbach in accordance with their subscriptions as aforesaid; that although a nominal consideration of ten dollars is recited in the deed conveying said property, defendant in truth and in fact, did not receive any money or other thing of value, excepting said shares of stock, upon the transfer of said real estate to said corporation. That said real estate forms the only asset of said corporation, and the entire capital stock of said corporation is owned by defendant and said Joseph Gummersbach, in the same proportions in which they were severally interested in the ownership of said real estate.

"Further answering, defendant states that he and said Joseph Gummersbach have no desire or intention of evading or repudiating said agreement dated November 11, 1908 set out in plaintiff's petition, and defendant states that the conveyance of said property to said corporation, as above set forth, was not made with the intention or purpose of evading said agreement. That after said conveyance was made to said' corporation, and prior to the institution of this suit, defendant for and in behalf of said Northeast Corner Realty Company, offered to give to plaintiff the obligation, in writing of said corporation, by which it would agree to pay to plaintiff the sum of one thousand, one hundred, twenty-five dollars whenever the real estate described in the petition would be sold for $140,000 or for any other price, which offer plaintiff refused. And defendant states that in addition to said agreement, in writing, of said corporation, defendant and said Gummersbach are willing to give to plaintiff and hereby tender and offer to plaintiff, their undertaking and agreement that if they, or either of

them, sell or dispose of their shares of stock in said Northeast Corner Realty Company, then defendant will pay to plaintiff said sum of $1125.

"Further answering said petition, defendant denies that he is indebted to plaintiff, and denies that he has in any wise breached the conditions of said contract, set out in the petition.

"Wherefore, having fully answered, defendant prays to be hence discharged with his costs."

After the filing of defendant's answer, plaintiff moved for judgment on the pleadings, which motion was by the court overruled. The cause coming on for trial, and a jury having been waived, the same was, by consent of the parties, submitted to the court on the pleadings. The court thereupon rendered judgment in favor of defendant on the pleadings in said cause, and the plaintiff appeals.

We are not concerned here with the question of the service alleged to have been rendered to defendant by plaintiff prior to the execution of this contract by defendant. This is not a suit by a broker for his commissions, but a suit upon this contract, the validity of which is not questioned, whereby the defendant agreed to pay to the plaintiff the sum of $1125, whenever the defendant should *sell* the property mentioned in the contract for the sum of $140,000, or at any other price which defendant might accept.

Plaintiff in his petition avers that the defendant did *sell* the property in question on or about March 5, 1910, for the consideration of ten dollars, which was accepted by defendant. The defendant in his answer admits the execution and delivery of the contract, but denies that he *sold* the property; he avers that he originally held the same in trust for one Joseph Gummersbach to the extent of an undivided two-thirds interest therein, and that he merely conveyed the title to a corporation in which he and Gummersbach held stock in proportion to their former respective interests in the

land; and that the corporation was organized merely for the purpose of holding title to this property and had no other assets.

The question, then, is simply whether this transfer of the title of the property in question to a corporation, in which the respective interests of Gummersbach and defendant were represented by the stock respectively held by them, was a *sale* within the meaning of the contract sued on, entitling plaintiff to recover.

It is clear that the obligation of defendant to pay to plaintiff the $1125 in question does not, by the terms of the contract, mature until such time as defendant shall sell the property in question. Was this transfer to the corporation a sale within the meaning of this contract? It is an elementary rule for the interpretation of contracts that the intention of the parties shall control. [Donovan v. Boeck, 217 Mo. 70, 116 S. W. 543.] If the terms of the contract are clear and free from ambiguity, this intention is to be gathered from the language of the instrument itself. Here we have nothing but the instrument itself to deal with. Our courts have repeatedly enunciated the well-known rule that the words employed by the parties are presumed to have been used in their usual and ordinary sense, and unless there is something to indicate a contrary intention the words used will be interpreted according to their popular meaning.

This brings us to the crucial thing in this case, which is the use of the word "sell" in the contract. It will be observed that defendant agreed that his obligation to plaintiff, whatever may have given rise to it, was to mature only at such time as defendant might *sell* the property in question. By the language of the contract, defendant's obligation does not mature upon the mere conveyance of the legal title thereto to a corporation organized to take and hold the same, the respective interests of the owners being thereafter represented by stock in the corporation, unless such

disposal thereof can be said to be included within the meaning of the word "sell" as used in the contract.

Webster defines the word "sell" as follows: "To transfer [property] for a consideration; to transfer the absolute or general title to [anything, as lands, goods, choses in action] to another for a price, or sum of money; to give up for a valuable consideration; to dispose of in return for something; to convey." And by the same author the word "sale" is defined to be: "Act of selling; a contract whereby the absolute, or general, ownership of property is transferred from one person to another for a price, or sum of money, or, loosely for any consideration." [See Webster's New International Dictionary, 1910, pp. 1916 and 1871.]

In the Standard Dictionary "sell" is defined: "To transfer [property] to another, or contract to do so, for a valuable consideration, especially money; transfer or dispose of the ownership or right of possession of, in return for money or for something else; dispose of by sale; vend." [Standard Dictionary, p. 1624.]

In the Century Dictionary the word "sell" is defined thus: "To give up or make over to another for a consideration; transfer ownership or exclusive right of possession in [something] to another for an equivalent; dispose of for something else, especially for money; the correlative of buy and usually distinguished from barter in which one commodity is given for another." [See 5 Century Dictionary, p. 5480.]

As we have said above, the parties to this contract are presumed to have employed the word in its usual and ordinary sense, and we need concern ourselves only with its popular use and meaning; and by its use we think it must appear that the parties contemplated that defendant's obligation to pay plaintiff was to mature at such time as defendant might dispose of the

property in question for a money consideration, or at any rate upon an actual disposal or alienation thereof either for cash or its equivalent. This is further borne out by other language in the contract itself, referring to a money consideration, viz.: "$140,000, or any other *price*" which defendant might accept. In its usual and ordinary sense, the word "price" means a consideration in current money given for the purchase of the thing sold. [Webster's New International Dictionary, p. 1702; 2 Bouvier's Law Dictionary (Ralle's Rev. 1897), p. 738.]

If the parties had intended defendant's obligation to mature upon the transfer of the title to the property for purposes and under circumstances such as we have here, or upon any transfer whatsoever of the title thereto by defendant, they would doubtless have employed appropriate language in the contract to express that intention. In point of fact there appears to have been no real disposal of the property by the owners thereof, but a mere transfer of the naked legal title, the parties really retaining their respective interests therein by means of the stock held by them in the corporation. We think that this cannot be said to be a *sale* of the property for a *price,* within the meaning of this contract.

That the conveyance of the property to the corporation was not intended by defendant as a device or scheme to evade the contract clearly appears from the offer of defendant, on behalf of the corporation, prior to the institution of this suit, to give plaintiff the written obligation of the corporation identical in terms with the contract sued upon. And the good faith of defendant is further evidenced by tendering to plaintiff, in the answer, in addition to the agreement of the corporation, above mentioned, an undertaking and agreement on the part of both himself and Gummersbach to the effect that should they, or either of them, sell or dispose of their or his stock in the corporation,

then defendant would pay to plaintiff the said sum of $1125.

Our conclusion is that the learned circuit judge to whom the cause was submitted correctly determined the issue raised by these pleadings. The judgment of the circuit court is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.