JACKLEY-WIEDMAN & COMPANY et al., Appellants, v. ONE MINUTE WASHER COMPANY, Appellee.

No. 42732.

JULY 17, 1935.

REHEARING DENIED OCTOBER 25, 1935.

A. D. Pugh and George Wrightman, for appellants.

Brammer, Brody, Charlton & Parker, for appellee.

DONEGAN, J.—The plaintiff in this action Jackley-Wiedman & Company is an Iowa corporation, and, during the time involved in this action, was engaged in the brokerage business in the city of Des Moines, Iowa. The defendant, One Minute Washer Company, was an Iowa corporation which owned and conducted a washing machine factory in the city of Newton, Iowa. The plaintiff E. J. Wiedman was the president of Jackley-Wiedman & Company. Some time prior to September 30, 1929, Mr. Wiedman contacted Mr. Bergman, who was the secretary and manager of the One Minute Washer Company, at its place of business in Newton, in reference to a merger of several companies which Jackley-Wiedman & Company had in mind, in which the One Minute Washer Company was included. Following this conversation with Bergman and pursuant to the arrangement he claims was arrived at in this conversation, Wiedman proceeded to contact another washing machine company at Newton in regard to a merger, but nothing came of these negotiations. Thereafter, Wiedman contacted a Mr. Adelman of Des Moines, Iowa, but before doing so he wrote Bergman for a confirmation of the oral arrangment which he claims was made

with Bergman in the conversation at Newton. In response to this request Bergman sent to Jackley-Wiedman & Company a letter as follows:

"Newton, Iowa, Sept. 30, 1929.
"Jackley-Wiedman & Company
"Des Moines, Iowa.
"Gentlemen:
"It is hereby agreed that our 5% commission arrangement with you in regard to a sale of our capital stock or assets or a merger of our Company is to be in effect on any sale of our capital stock or assets as a result of your efforts, also on any merger of our Company as a result of your efforts. The sale or merger, however, is to be at a price or on a basis that is satisfactory to us.
"Very truly yours,
"One Minute Manufacturing Co.
"By F. H. Bergman, Sec'y & Mgr."

Wiedman then proceeded to contact Mr. Adelman, who signified his interest in the proposition presented to him, and thereafter Wiedman procured from Bergman certain papers containing information in regard to the washing machine company in order to present them to Adelman. After looking over these papers, Adelman sent the following letter to Jackley-Wiedman & Co.:

"November 30, 1929.
"Jackley-Wiedman Co.,
"701 Register & Tribune Bldg.
"Des Moines, Iowa.
"Gentlemen:
"We are sending you, under separate cover, all papers in connection with the One Minute Washing Machine Company, Newton, Iowa.
"We have gone into the matter very carefully and have concluded that it would be best not to go into the matter of taking over the plant.
"Thanking you for the courtesies extended, we are
"Yours very truly,
"J. D. Adelman, President."

After these papers had been received by Jackley-Wiedman

& Company, Wiedman returned them to Mr. Bergman, and no further negotiations took place between Jackley-Wiedman & Company and Adelman.

On December 30, 1931, a news item appeared in the Des Moines Register or Tribune in regard to some sort of a re-organization of the One Minute Washer Company in which Adelman was an interested party, and, thereafter, Jackley-Wiedman & Company made claim against the Washer Company for a commission. The Washer Company refused to pay such commission, and this action was instituted in order to collect the same. Upon the trial of the case the defendant made a motion for a directed verdict at the close of the plaintiffs' testimony, and this motion was sustained by the court and judgment entered accordingly. The plaintiffs filed a motion for a new trial which was overruled, and thereupon the plaintiffs appealed.

The motion for a directed verdict contained several grounds and was sustained generally. Among other things, such motion alleged in substance that the evidence was not sufficient to sustain a verdict for the plaintiffs. The question before us, therefore, is: Was there sufficient evidence in behalf of plaintiffs to present a question for the determination of the jury?

As the plaintiffs are here seeking to recover upon an express contract for a commission, it is necessary, in the first place, to determine the terms of the contract upon which they base their cause of action. Wiedman testified to a conversation with Mr. Bergman, of the Washer Company, on the occasion of his visit to the Washer Company's place of business at Newton, Iowa. He claims that in this conversation Bergman agreed that the Washer Company would be interested in a reorganization of some kind, and that a commission would be paid in case appellants found a purchaser for the capital stock or assets of defendant company or brought about a merger thereof at a price and on a basis satisfactory to the defendant company. The testimony of Wiedman, however, further shows that, after his conversation with Bergman and before contacting Adelman, he wrote Mr. Bergman and asked for a confirmation of the oral arrangement; that in response thereto Bergman sent him the letter of September 30, 1929, above set out; that this letter sets forth his understanding with Bergman; and that it was pursuant to this letter that he proceeded and continued to work. The letter itself purports to state the conditions under which a

commission would be paid, and there is nothing in the evidence to show that there was any objection or intimation that the letter was not then or afterwards considered as stating all the terms of the arrangement. The letter itself states that the arrangement for the commission of 5 per cent "is to be in effect on *any sale of our capital stock or assets as a result of your efforts,* also on *any merger of our company as a result of your efforts."* (Italics are ours.) Before the appellant would be entitled to a commission under the conditions stated in this letter, it would be necessary that there be a sale of capital stock or assets, or a merger of the company, and that such sale or merger result from the efforts of appellant. The evidence as to the transaction which actually took place between the appellee and Adelman is, in our opinion, entirely insufficient to establish either a sale of capital stock or assets, or a merger of the company, or that what was actually done was the result of appellant's efforts.

It seems unnecessary to discuss the proposition that there was no merger within the meaning of the letter. The term "merger" has a well-defined meaning in law, and it is quite apparent from the evidence that this meaning was in the minds of the parties. Wiedman testified that, even before contacting Adelman, his company had in mind a merger of several washing machine companies of which appellee was one. After Wiedman's conversation with Bergman and before the letter containing the terms of the arrangement was written, Wiedman began his efforts to merge the One Minute Washer Company with another washing machine company in Newton. And, after the negotiations with Adelman were dropped, efforts were made by the appellants to effect a merger of appellee with a washing machine company at Fairfield, Iowa. In fact, we do not understand that the appellants claim that the transaction consummated between appellee and Adelman constituted either a merger or a sale of assets, but that they do claim that it constituted a sale of the capital stock of the appellee in compliance with the terms of the contract contained in the letter of September 30, 1929. In order to determine whether or not there was a sale of the capital stock within the meaning of the letter above referred to, it becomes necessary to consider the nature of the transaction which was carried out between the appellee and Adelman.

Prior to the amendment of its articles of incorporation for

the purpose of carrying out the deal made with Adelman, all of the outstanding capital stock of the appellee corporation consisted of 5,668½ shares of common stock of the par value of $100 per share. As amended, the articles of incorporation provided for 15,000 shares of authorized capital stock without nominal par value, of which 4,000 shares were preferred stock and 11,000 shares common stock. The amendment also provided that 4,000 shares of the common stock then outstanding were converted into 4,000 shares of preferred stock without par value, and the remaining shares of the common stock then outstanding were converted into 3,000 shares of common stock without par value. The amendment also provided that, unless the preferred stockholders agreed otherwise, each share of common stock then outstanding should be entitled to its pro rata share of its preferred and common stock converted as above provided. The amendment also provided for the issuance of new certificates of stock for the stock converted upon the surrender of the old certificates for cancellation. According to the amendment, certain restrictions and limitations were placed upon the new no par common stock in the event dividends were not paid upon the preferred stock; but we deem it unnecessary to go into the details of these restrictions and limitations. Under the terms of the transaction with Adelman, it appears that he guaranteed the payment of a debt of $25,000 which was then outstanding against the appellee corporation, and it is the contention of the appellants that the 4,000 shares of new preferred stock and the release of the corporation from the payment of the $25,000 debt which was assumed by Adelman constituted the consideration and payment received for the transfer of the 5,668½ shares of the old outstanding common stock and constituted a sale of said stock within the meaning of the letter of September 30, 1929.

In support of this contention appellants cite Wells v. Hocking Valley Coal Co., 137 Iowa 526, 114 N. W. 1076. In that case, however, the coal company had given the plaintiff, Wells, a written option on all of its property both tangible and intangible, agreeing that he might retain as commission for his services all of the purchase price received exceeding a certain amount. The coal company later sold the property and, instead of conveying the title by deeds and bills of sale, transferred all the outstanding stock of the corporation to the purchaser. The purchase price exceeded the amount named in the option above

which Wells was to be entitled to retain as commission. Wells instituted suit for his commission claiming that, in addition to the written agreement, there was an oral agreement between him and the coal company by which he was authorized to negotiate the sale of all the mining property either upon the basis of a conveyance of the property itself or a transfer of all the capital stock of the corporation, and alleged that the sale had been brought about by him. The defendant coal company objected to any evidence as to the oral agreement on the ground that it was inconsistent with the written contract. The trial court overruled such objections and this court sustained the trial court's rulings. In that case the written contract involved all the tangible and intangible property of the corporation, while the alleged oral contract involved all the outstanding stock of the corporation. The court decided that there was no inconsistency between the contracts. We can see nothing in that case to support the appellants' contention that a sale of all the outstanding capital stock of a corporation is the same as a reorganization of the corporation under which the outstanding capital stock is exchanged for new stock of a different character issued by the same corporation, in connection with the reorganization.

Moreover, we think it is quite apparent from the evidence that the ''sale'' of capital stock and the ''price'' to be received in case of such sale, as these words are used in the letter of September 30, 1929, contemplated a disposal and transfer of all the stock to some other person or corporation for money, and not some sort of reorganization of the appellee corporation itself under which a new kind of stock might be issued in exchange for the stock then outstanding. Wiedman himself testified that Bergman was interested in the proposition of sale, because ''he was getting old and he needed some money'', and Adelman's letter of November 30, 1929, which accompanied the return of the papers of the appellee company and contained the statement, ''we have gone into the matter very carefully and have concluded that it would be best not to go into the *matter of taking over the plant*'' (italics are ours), indicates that the proposition which appellants had been taking up with him involved ''taking over the plant'' and not merely a reorganization of the appellee corporation. There is no evidence as to any direct negotiation or transaction between appellee and Adelman prior to the 30th day of December, 1931. The evidence shows

affirmatively that after the papers of the appellee corporation had been returned to appellants by Adelman, on November 30, 1929, nothing whatever was done by the appellants in regard to keeping Adelman interested in the proposition which they had been authorized to present to him. We think the evidence falls far short of showing that the transaction consummated between appellee and Adelman was such as was within the contemplation of the parties when appellee wrote the letter of September 30, 1929. McCarney v. Lightner, 188 Iowa 1271, 175 N. W. 751; Good v. Erker, 170 Mo. App. 681, 153 S. W. 556; Close v. Browne, 230 Ill. 228, 82 N. E. 629, 13 L. R. A. (N. S.) 634.

Appellants contend, however, that their only duty was to procure a purchaser with whom a deal might be made by the appellee on terms satisfactory to the appellee. If such was the contract, appellants would undoubtedly be entitled to a commission by merely placing Adelman in touch with the appellee, if Adelman and appellee thereafter reached some sort of an agreement. The trouble with this contention is that such was not the contract. The contract, as already said, was contained in the letter of September 30, 1929. This contract called for a sale of capital stock or assets, or a merger of the company, as a result of appellants' efforts. As already said, there was no merger, and there was no sale of capital assets, and for the reasons which we have already discussed, we are satisfied that there was no sale of capital stock as contemplated by the parties at the time the letter was written. At that time the sale contemplated was a disposal of the stock or assets out of which Bergman would get ready money. The appellants' negotiations with Adelman with a view to making the deal contemplated in the letter were terminated because Adelman was not interested in taking over the plant of the appellee. Wiedman himself testified that, during the two years from the time he discontinued working on Adelman until the time that he learned of the deal between Adelman and appellee, the market had become so completely demoralized that nothing except the best of stocks could be sold, and we think that, even without such testimony, the court could take judicial notice of the business and financial conditions which were existing during that time. The fact that the appellants had tried to interest Adelman in the proposition of buying the capital stock or assets of the appellee prior to November 30, 1929, does not, therefore, in our opinion, tend in any way to

prove that the deal which was finally consummated between Adelman and the appellee was in any way the result of any efforts on the part of the appellants.

We do not think that the trial court erred in sustaining the motion for a directed verdict in favor of the appellee, and the case is, therefore, affirmed.—Affirmed.

KINTZINGER, C. J., and all Justices concur.