MERCANTILE TRUST COMPANY, Respondent, v. WILLIAM R. LAMAR, Appellant.

St. Louis Court of Appeals, May 3, 1910.

1. **REAL ESTATE BROKERS: Contract of Employment: Construction.** A contract employing a broker to procure a purchaser, which stipulates that, if a sale or exchange of the property is made while in charge of the broker, the owner will pay for his services a commission on the price, and which gives the owner the right to terminate the agency on thirty days' notice, does not reserve to the owner the right to himself sell the property during the agency without paying a commission.

2. ————: ————: **Bilateral Agreement.** Where the contract employing a broker to procure a purchaser was not signed by the broker, but he acted under it and advertised the property, the agreement was bilateral.

3. ————: ————: **Construction.** A contract employing a broker to procure a purchaser, which stipulates that, if a sale or ex-

148 App—23

Trust Co. v. Lamar.

change is made while the property is in charge of the broker, the owner will pay for his services a commission on the price, and which reserves to the owner the right to terminate the agency on thirty days' notice, binds the owner to pay the commission where he sells the property during the agency, but does not bind him to make a sale during the agency unless a buyer is found by the broker; so that where, before the termination of the agency, the owner contracted to sell, but deferred the execution of the deed until after the termination of the agency, he was liable for the commission, and, where he refused to agree to sell until after the termination of the agency, he was not liable for a commission on a sale subsequently made.

4. ———: **Right of Recovery: Conflicting Evidence: Peremptory Instruction for Plaintiff Held Erroneous.** In an action by a broker for commission due on a contract stipulating for a commission on a sale or exchange made while the property is in charge of the broker, evidence *held* to require submission to the jury of the issue whether the owner contracted to sell during the agency, but deferred the execution of the deed until after the termination of the agency, which would authorize a recovery for plaintiff, or whether the owner refused to agree to sell until after the termination of the agency, thereby relieving himself from liability for commission on a sale subsequently made, and the giving of a peremptory instruction to find for plaintiff was, therefore, error.

5. **TRIAL PRACTICE: Conflicting Evidence: Question for Jury.** Where there is a substantial testimony on both sides of an issue, the jury must pass on the credibility of the evidence as a whole.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*Joseph A. Wright* for appellant.

(1) An exclusive agency does not deprive the owner of the right to find a purchaser or obligate him to pay a commission, if he sells his own property without the aid of the broker. Packing Co. v. Farmer's Union, 55 Cal. 606; Waterman v. Boltinghouse, 82 Cal. 659; Moses v. Bierling, 31 N. Y. 462; Schoenmann v. Whitt, 136 Wis. 332; Stensgaard v. Smith, 43 Minn. 11.

(2) In its inception the appointment was a *nudum pactum,* because respondent did not agree to do anything; and taking the view most favorable to respondent, the offer could only be accepted by using ordinary diligence to sell the property, with the burden of producing such proof, and with the question of having exercised proper diligence for the jury. However, construing the appointment in the light of circumstances, the advertising was wholly voluntary, and cannot be made a basis for a consideration. Schoenmann v. Whitt, 136 Wis. 332; Stensgaard v. Smith, 43 Minn. 11; Santaella & Co. v. Lange Co., 155 Fed. 719; Transportation Co. v. Bolt and Nut Co., 114 Fed. 77. (3) Respondent in its printed form of appointment chose to make the obligation to pay commissions depend upon this condition, "If a sale or exchange of said property is made while in charge of said company." Appellant made no sale until June 1, 1908, more than thirty days after notice of withdrawal, and after property had ceased to be in its charge. Close v. Browne, 230 Ill. 228, 13 L. R. A. (N. S.) 634; Five Per Cent Cases, 110 U. S. 471; Fleet v. Hertz, 201 Ill. 594; Ide v. Leiser, 10 Mont. 5; Evans v. Green, 23 Miss. 294; Creveling v. Wood, 95 Pa. 152; Baptist Church v. Wood, 46 N. Y. 131. (4) Respondent's printed form requires "a sale," and makes no use of any terms or words suggesting an agreement of sale or an executory contract of sale, and does not even use the verb sell. The distinction is well founded in law, and should be applied in this case. 1 Mechem on Sales, par. 5; Close v. Browne, 230 Ill. 228; 13 L. R. A. (N. S.) 634; 9 Cyc. 590; Millhiser v. Erdman, 98 N. C. 292; Goodwin v. Kerr, 80 Mo. 276; Five Per Cent Cases, 110 U. S. 471; Strong, Deemer & Co. v. Dinniny, 175 Pa. 586.

*Karl M. Vetsburg* for respondent.

(1) Under the contract in this case the agent is entitled to a commission on a sale of the property made by the owner himself without the aid of the agent. Metcalf v. Kent, 104 Iowa 487; Chapin v. Bridges, 116 Mass. 105; Cook v. Blake, 98 Mich. 289; Goward v. Waters, 98 Mass. 596; Lapham v. Flint, 86 Minn. 376; Kimmell v. Skelly, 130 Cal. 555; Gregory v. Bonney, 135 Cal. 589; Crane v. McCormick, 95 Cal. 176; Singleton v. O'Blenis, 125 Ind. 151; Fairchild v. Rogers, 32 Minn. 269; Harrell v. Zimpleman, 66 Tex. 292; Stringfellow v. Powers, 23 S. W. 313, 19 L. R. A. (N. S.), note p. 599; 19 Cyc. 264. (2) The authority in this case was an offer looking to the formation of a unilateral contract by the performance of certain services specifically provided for therein. On the performance thereof it became a power coupled with an interest and was no longer revocable at will. McRay v. Pfost, 118 Mo. App. 672. And the performance of the services specified makes a binding contract and furnishes a valuable consideration for the payment of commissions when a sale is made either through the efforts of the agent or by the owner himself. Cases cited under point 1. (3) A deed or transfer not being a constituent element of a sale. Rice v. Mayo, 1907 Mass. 550; Donohue v. Flanagan, 28 N. Y. S. R. 757; Eaton v. Richari, 83 Cal. 185; Watson v. Brooks, 8 Sawyer (U. S.) 316; Sanderson v. Wellford, 116 S. W. 382; Southwick v. Swavienski, 99 N. Y. S. 1079. Under any theory of the evidence, the sale was made prior to the expiration of the notice of withdrawal, though this fact is not essential to plaintiff's right to recover in this case. Goodson v. Embleton, 106 Mo. App. 77; Desmond v. Stebbins, 140 Mass. 339; Pope v. Caddell, 102 S. W. 327; 9 Current Law, 414 (note 88), 419; Brown v. Gilpin, 90 Pac. 267; Gibbins v. Sherwin, 28 Neb. 146; Hugill v. Weekley, 61 S. E. 360. (4) The owner cannot, by refusing to com-

plete the sale, defeat the agent of his commissions.  In such an event, the law treats the sale as made in so far as the matter of commissions is concerned.  Goodson v. Embleton, 106 Mo. App. 77; Sallee v. McMurry, 113 Mo. App. 253; Watson v. Brooks, 8 Sawyer (U. S.) 316; Wells v. Andreas, 115 N. W. 462; Branch v. Moore, 84 Ark. 462; Canadian Imp Co. v. Cooper, 161 Fed. 279; Hugill v. Weekley, 61 S. E. 360; Sibbald v. Iron Co., 83 N. Y. 384.

GOODE, J.—By an instrument signed by defendant and dated February 1, 1907, he appointed plaintiff exclusive agent to sell a house and lot, to-wit, a part of lot 2, block 4847 in the city of St. Louis, stating the lowest price he would accept was $6750.  The instrument contained this clause:

"In consideration of the Mercantile Trust Company advertising the property, and their efforts to sell the same, if a sale or exchange of said property is made while in charge of said company, I agree to pay for their services a commission of 2 1-2 per cent on above price.  My title is perfect, and, in event of sale, general warranty deed will be given.

"I reserve the right to terminate this agency at any time on thirty days' notice in writing.  It is further agreed that, if no sale be made, I am to be at no expense whatever."

At the date of the contract plaintiff had in its service an employee by the name of Max Weinburg, who testified at the trial that during the summer of 1907, and therefore subsequent to the date of plaintiff's agency, he mentioned to Ben F. Reinberger defendant's property, proposing to sell it to Reinberger for a home, as he said he wanted to buy a home, or rather his wife did.  The same witness said further defendant told him about the middle of May, 1908, defendant had sold his house; that the next day Weinburg met Reinberger and the latter said he had bought

a house but could not tell the witness what house he had bought until the last of the month; thereupon witness told Reinberger that he (Reinberger) had bought defendant's house and Reinberger laughed. The witness communicated these facts to the plaintiff company and the latter, May 15, 1908, wrote a letter to defendant, stating plaintiff had been given an exclusive contract for the sale of the property, subject to the termination of the agency by defendant at any time on thirty days' written notice; saying further, plaintiff had received notice from defendant April 30th of the withdrawal of the agency, which would make the agency terminate May 29, 1908; that plaintiff had been informed defendant had contracted to sell the property to Ben F. Reinberger for $6500 and if this was the case, though a deed had not yet passed, plaintiff would be entitled to a commission on the sale and it should be closed through plaintiff; that Weinburg had submitted the house to Reinberger six months before and had worked with him and others trying to make a sale. This letter was not answered by defendant. A contract in writing signed by Lamar and by Reinberger and his wife and dated June 1, 1908, is in evidence and shows a sale of the property by defendant to Reinberger. The contract recited the receipt of one hundred dollars from Reinberger as earnest money and part of the purchase price, and stated the terms of the sale, to-wit, $2600 cash and that the sale was subject to a first deed of trust for $4000, etc.; said further if the title was found to be imperfect on examination and could not be perfected within a reasonable time, Reinberger was to be paid the reasonable cost of examining the title and the earnest money was to be refunded; that the sale was to be closed June 1, 1908, at the Savings Trust Company, and if not closed by said date owing to the failure and neglect of the purchaser to comply with the terms, the earnest money was to be forfeited. Reinberger testified his wife bought the property and paid $6600 for it, that on June first

the abstract of title had already been run down, but there was no sale until said date; that he knew of no earlier contract than the one mentioned but he and his wife saw the property in May; did not see it the latter part of April; saw it early in May. He was asked if he bought the property or had an agreement to purchase prior to the date of the written contract, though no agreement was put in writing, and answered in the negative; testified defendant said he would not be able to sell the property until June first; that the sale was closed about one o'clock June first, though the earnest money receipt was signed at nine o'clock on the morning of said day. The following notice from defendant to plaintiff was put in evidence:

"When I listed my property (5209 Kensington avenue) for sale, and thereby appointing you exclusive agent for same, it was agreed that whenever I desired to take the same out of your hands, I would have to furnish you with thirty days' notice of my intention of doing so. Please accept this, therefore, as notice of my withdrawal of said property from your agency at the expiration of said period (*viz.*, May 29, 1908)."

Said notice was received by plaintiff on April 29, 1908, and was acknowledged by it May first. May 30th was Memorial Day and Saturday, the next day, May 31st, of course, being Sunday. Defendant testified, identifying the earnest money receipt signed by Reinberger, that it was signed on June 1, 1908. There is some contention about the date at the head of this instrument, plaintiff insisting it had been written originally under some date in May and the month erased and June written over it. Reinberger testified the stenographer had written in the wrong date, but he discovered it and had it changed; that the instrument was signed June first and the deed was also signed June first. Defendant admitted he told Reinberger he did not want to close the trade before the first of June and admitted, too, he made the statement

because he felt if he sold prior to June first, he might be liable to plaintiff for a commission; said he told Reinberger this before June first. He denied that Reinberger had agreed to buy the property before May 29th and testified further he did not close the sale because he felt he might be liable for the commission. This witness contradicted the testimony of other witnesses who said defendant had testified before a justice of the peace where the case was first tried, that he had had an agreement prior to May 29th for the sale of the property and delayed closing it until the thirty days' notice had expired by which he had revoked plaintiff's agency and did this to "split the commission with Reinberger." The court below asked defendant while on the stand, whether as a matter of fact defendant's reason for postponing the closing of the sale until June first was not because defendant thought he would not be liable for the commission after that time and the witness answered: "Yes." The treasurer of the Title Guaranty Company testified Reinberger ordered a certificate of title to the property and his company made out and delivered the certificate on May 29, 1908, to Reinberger, it having been ordered by the latter on May 26th. Another witness testified to overhearing the conversation between Weinburg and Reinberger in which Weinburg proposed to sell Reinberger a house and Reinberger said he had already bought one. Weinburg asked him where it was and Reinberger said he was not at liberty to state and could not state until the end of the month. Weinburg said he (Reinberger) had bought Dr. Lamar's house. The evidence showed plaintiff had gone to expense in advertising the property for sale. Such, in substance, was the testimony in the case, the contention between the parties being mainly this: Plaintiff insists defendant had entered into an agreement to sell the property to Reinberger or the latter's wife, some time prior to May 29th, when plaintiff's agency would terminate, and deferred closing the sale for the purpose

of evading payment to plaintiff of a commission; whereas, defendant contends no sale had been agreed upon until June first. Besides this position on said proposition, defendant further contends he had the right to sell the property at any time pending plaintiff's agency without paying a commission to the latter, if he made the sale himself and plaintiff was not the procuring cause of it. Two instructions to that effect were requested and refused. . Another contention of defendant is that if no deed, contract of sale, receipt for earnest money, or other written instrument contracting to sell the property had been signed, executed and delivered until after the termination of the agency and plaintiff was not the efficient cause of the sale, it was not entitled to a commission. At the conclusion of the evidence the court directed the jury to return a verdict in plaintiff's favor, which having been done and judgment entered accordingly, defendant appealed.

The quoted clause of the contract said in so many words if a sale or exchange of the property was made while in the charge of the company, defendant agreed to pay a commission on the price, and this clause is incompatible with the theory that defendant reserved the right to sell himself during plaintiff's agency without paying a commission. [Chapin v. Bridges, 116 Mass. 105; Cooke v. Blake, 98 Mich. 105; Metchalfe v. Kent, 104 Ia. 487.] In this connection we reject the argument that the court was bound to submit to the jury the question of whether the contract between plaintiff and defendant for an agency by the former took effect. It is true the instrument appointing plaintiff agent was not signed by it, but the uncontradicted evidence shows it acted under the instrument and advertised the property extensively; this made the agreement bilateral. [Schoenmann v. Whitte, 136 Mass. 332, 19 L. R. A. (n. s.) 598, and note.] Neither do we accede to the proposition that if defendant had entered into a definite agreement with Reinberger by which defendant

agreed to sell the property to the latter and his wife and they agreed to buy it, this was not a sale which would entitle plaintiff to his commission because not evidenced by an instrument in writing. If such an agreement was made prior to the termination of plaintiff's agency on May 29th, and the execution of a deed was deferred merely for the purpose of evading liability to plaintiff for a commission, the contract of sale was so far effective as to entitle plaintiff to a verdict; though no doubt the title would not pass until the conveyance was executed. The instrument by which plaintiff was appointed agent would be defeated in one of its main provisions if a complete agreement might have been reached by defendant and the Reinbergers, and yet liability to plaintiff be evaded by postponing the formal consummation of the sale until its agency expired. Such an interpretation would relieve defendant from the duty to observe good faith in keeping his agreement with plaintiff. But though the foregoing proposition is sound if a sale was actually agreed upon between defendant and the Reinbergers prior to May 29th, it is also a sound proposition that defendant had the right to refuse to agree to sell to them until after May 29th and to do this for the purpose of escaping the payment of a commission. Otherwise stated, we hold the contract bound defendant to pay the commission if he sold the property during the period of the agency, but did not bind him to make a sale during said period unless a buyer was found by plaintiff. The utmost of his obligation to plaintiff was to allow it to find a purchaser while its agency continued and thereby earn a commission, or to pay plaintiff a commission not earned by it in the event defendant found a buyer and sold during the period. Defendant would have been within his rights in refusing to sell until the expiration of the agency.

The point of real difficulty is whether the evidence showed so conclusively a sale had been agreed upon between defendant and Reinberger prior to May 29th and

the consummation of it by payment of the purchase money and execution of the deed had been postponed until after said date, as to warrant the court to order a verdict for plaintiff. The evidence is extremely cogent in its tendency to prove those were the facts. Defendant himself admitted his reason "for postponing the closing of the sale until June first" was because he thought he would be liable for a commission if he closed before said date; and there is much similar evidence. The words of defendant are somewhat ambiguous if read along with the rest of his testimony. They might be understood to mean, either that he had agreed with Reinberger upon the terms of the sale and postponed closing the matter or that he had postponed coming to any agreement until June first. Both he and Reinberger testified there was no sale prior to said date and Reinberger said he knew of no contract prior to the one of June first; said also he had no agreement to purchase prior to said date which he had not put into writing; had no verbal agreement; said he had no verbal agreement because Dr. Lamar declared he would not be able to sell until June first. Lamar testified he had a talk with Reinberger prior to the date of the purchase money receipt and mentioned the price to him, but denied Reinberger agreed to buy. This testimony looks to be inconsistent with the great weight of the evidence. Nevertheless after reflecting over the question we have concluded the issue was for the jury and the peremptory instruction was wrongly given. In the brief for plaintiff the contention put forward is that all the credible evidence tended to prove an agreement of sale had been entered into by Reinberger and defendant prior to June first. If there was substantial testimony on both sides of the issue, it was for the jury to pass on the credibility of the evidence as a whole.

The judgment is reversed and the cause remanded. All concur.