John C. SCHULTE and Jesse Cox, d/b/a Schulte Realty Company of Perryville, Missouri (Plaintiffs), Respondents,

v.

Lester P. CRITES and Lloyd Crites (Defendants), Appellants.

No. 29689.

St. Louis Court of Appeals.

Missouri.

April 2, 1957.

R. P. Smith, Cape Girardeau, for appellants.

J. O. Swink, Farmington, for respondents.

HOUSER, Commissioner.

Plaintiffs, real estate brokers, sued for $900 damages for breach of a real estate brokerage contract of employment. A jury trial resulted in a judgment for defendants. The circuit court sustained plaintiffs' motion for a new trial. Defendants have appealed from that judgment.

On January 5, 1948 defendants, Lester P. Crites and his father Lloyd Crites, executed a note and deed of trust on a tract of land owned by the son to secure a $14,000 note payable to James H. Adams and wife in annual installments of $1,000 plus interest. Subsequently the payees transferred their interest in the note and deed of trust to Walter Q. Adams.

On March 19, 1951 defendants Crites executed a second deed of trust on the land to secure a $5,900 demand note payable to John R. Roberts.

On January 19, 1953 defendant Lester P. Crites executed a deed of trust on a contiguous tract of land to secure a $750 demand note payable to Harris Motor Car Company.

On May 1, 1953, defendants Crites signed a real estate brokerage contract giving "Schulte Realty" *exclusive authority* to sell the land on which the first and second deeds of trust were given "at the price and sum of $30,000.00 ~~and all above the said $ -------- the said Schulte Realty is to retain as their commission~~, or I agree to pay a commission of 5 per cent on the amount said property is sold for, if sold in a period of 12 months." Plaintiffs affirmed and defendants denied that the above stricken portion of the contract and a subsequent paragraph immaterial to the issues were part and parcel of the contract when it was originally signed. Lester P. Crites testified that he told the brokers about the three mortgages on the land and that he wanted to sell it "because I had those mortgages on it and if I could pay it off * * *. It would take about eighteen thousand ($18,-000) to to clear it up."

Following the execution of the contract the brokers advertised the property and showed it to various parties but their efforts produced no offers.

In the fall of 1953 Lester P. Crites' creditors began to press for payment. Walter Q. Adams notified him that foreclosure proceedings would be instituted under the first deed of trust if the payment of $1,000 principal plus interest, due January 2, 1954, was not paid on time. John R. Roberts, holder of the second deed of trust, and Harris Motor Car Company demanded payment of their notes. According to Crites he told Schulte about the required payments, his inability to meet them, the threatened and im-

pending foreclosures, and that something "would have to be done." Schulte testified that the only information Crites ever gave him about mortgages was that Crites owed $10,000 on the farm to a Mr. Adams but that the note would stand as long as $1,000 principal and interest were paid on it every year; that Crites never mentioned foreclosure by Adams, Harris Motor Car Company or anyone else. During the fall of 1953 in the presence of broker Schulte and a prospective purchaser, one Wallers, Crites offered to rent the land for $2,000 a year cash in advance or sell the land for $16,000. Crites acknowledged that the $16,000 offer was made but asserted that it was conditioned on the acceptance by John R. Roberts of a $2,000 personal note for the balance due him. Questioned about the real estate commission in case of such sale Crites testified that the broker "would have got his commission" but did not explain where it would have come from. Crites testified that he and the broker did not discuss the commission in the event of a sale on the last mentioned terms. Crites testified that he approached the holder of the second deed of trust, Roberts, with the suggestion that the land be sold and that Roberts carry the balance due him in the form of a personal note; that Roberts would not agree to this proposal. An agreement was reached, however, whereby Crites promised to make Roberts a warranty deed to the land in return for which Roberts agreed to cancel the principal and interest due on his note and pay all claims against the land, including the balances due on the Adams and motor car company notes plus delinquent taxes, insurance premiums and abstract fees. The abstract fees had been incurred by Crites in a previous effort to sell the lands to a third party. Pursuant to this agreement Roberts canceled and returned to Crites his $5,900 note (which with interest then due amounted to "about $6,300") and paid Crites' creditors these sums in discharge of their claims: Walter Q. Adams, $10,515; Harris Motor Car Company, $808.91; delinquent taxes, $111.94; delinquent insurance account, $45.-75; abstracter's fees, $205. On January 7,

1954 Lester P. and Lloyd Crites executed a warranty deed conveying the real estate to John R. Roberts. The deed recited a consideration of "Ten Dollars and other good and valuable considerations" but no actual cash was paid to the Criteses. The purchaser "took over" the place the same day. The three deeds of trust were satisfied of record and the Adams, Roberts and motor company notes, duly marked paid, were returned to Lester P. Crites. Plaintiffs had no advance notice of this transaction. Upon learning of the deed of January 7, 1954 plaintiffs made demand for their commission and later brought this suit.

The trial court sustained the motion for a new trial without specifying the grounds for its action. One of the grounds assigned in the motion for a new trial was error in the giving of Instruction D–1. D–1 directed a verdict for defendants upon a finding that at the time of the execution of the brokerage contract plaintiffs were informed of the several deeds of trust and were later informed of the delinquencies and impending foreclosures; that the deed of January 7, 1954 was made to avoid threatened foreclosure, and that defendants received no consideration for the deed except the satisfaction of the three notes and deeds of trust and the payment of the delinquent insurance, taxes and abstract fees.

The brokerage contract created in the brokers an exclusive authority to sell, entitling the brokers to a commission of 5% of the sale price upon a sale of the property during the life of the contract by the property owner independent of any effort on the part of the brokers. Blankenship v. Kiehne, 240 Mo.App. 1197, 225 S.W.2d 166; Howard & Brown Realty Co. v. Barnett, Mo.App., 206 S.W. 417; Da Pron v. Neu, Mo.App., 43 S.W.2d 915; Mercantile Trust Co. v. Lamar, 148 Mo.App. 353, 128 S.W. 20. If the instant transaction constituted a *sale* defendants infringed upon the exclusive authority of plaintiffs to sell the property and defendants would be liable. Blankenship v. Kiehne, supra. The question is whether mortgagors' conveyance of the real estate

to one of the mortgagees in consideration of the cancellation of all mortgage debts on the land and the payment of delinquent taxes and unpaid bills for insurance and abstracting services incurred by mortgagors constituted a *sale* within the meaning of the brokerage contract.

The term "sale" has no fixed or invariable meaning but is to be interpreted in accordance with the manifest intention of the parties. Freund Motor Co. v. Alma Realty & Investment Co., 235 Mo.App. 587, 142 S.W.2d 793; 91 C.J.S., Vendor & Purchaser, § 1, p. 828. A sale ordinarily is defined as a contract to transfer property rights for money paid or promised to be paid, but the term is broad enough to include the transfer of property for any sort of valuable consideration. Freund Motor Co. v. Alma Realty & Investment Co., supra; Good v. Erker, 170 Mo.App. 681, 153 S.W. 556. A sale of real property contemplates a consideration or price, a seller, a purchaser, transfer of property rights and a delivery of the thing sold. 91 C.J.S., Vendor & Purchaser, § 1 c, p. 829.

The instant transaction was a sale. All of the elements of a sale were present. The property was "sold" within the specified period. The literal terms of the brokerage contract were satisfied. The contract of sale was fully executed—the consideration was paid, the deeds of trust satisfied of record, the notes canceled, the warranty deed delivered, and the grantee assumed possession of the real estate. Considering the nature and character of the contract and its purposes, the surrounding circumstances and the context, Wilson v. Owen, Mo.Sup., 261 S.W.2d 19, loc. cit. 23; Van Deusen v. Ruth, 343 Mo. 1096, 125 S.W.2d 1, the words "sell" and "sold" as used comprehend a conveyance to a mortgagee for the amount of the mortgages and debts.

As far as *amount* is concerned a sale for a sum sufficient to extinguish the debts was within the contemplation of the parties. When during the previous year the principal and interest payments came due on the Adams note Adams accepted the interest without any payment on the principal but warned Crites that he would foreclose next year if Crites could not make the principal and interest payments. Crites thereafter signed the contract of May 1, 1953 containing a provision for a brokerage commission if the land was sold within *twelve* months, with full knowledge that the payment of principal and interest to Adams would come due within *eight* months. In view of Crites' previous conversation with Adams he knew that foreclosure would be the inevitable consequence if he failed to pay the Roberts and motor car company notes. Crites must have considered the possibility of a deficiency judgment or judgments against him if foreclosure sale of the mortgaged property did not bring the amount of the debts. Crites testified that at the time of the execution of the brokerage contract he fully revealed to the brokers the amounts due on the three mortgages, approximately $18,000, and *told the brokers that the reason for selling the farm was to pay off the mortgages*. Although the contract named a sales price considerably in excess of the amount of the mortgage debts it provided for a commission upon a sale for a lesser figure. The parties manifested an intention to sell the property at a lesser figure, namely, in an amount approximating the total of the mortgages and debts. Broker Schulte testified that Schulte, in the presence of Crites, offered to sell the land to Wallers for $16,000. Apparently this was an unconditional offer. This testimony was corroborated by Wallers. Crites testified that in the presence of Schulte and Wallers he offered to sell the land for $16,000, but on condition that one of Crites' creditors would accept a $2,000 personal note for the balance due that creditor. Crites admitted that in case of such sale the broker "would have got his commission" thus clearly manifesting an intent to relate a sale in that price area to the brokerage contract. All the evidence indicates that a sale of the land in an amount sufficient to extinguish the mortgage debts

was within the reasonable contemplation of the parties.

In John Whiteman & Co. v. Fidei, 176 Pa.Super. 142, 106 A.2d 644, 645, 46 A.L.R.2d 1113, a real estate broker who had an exclusive contractual right to sell certain property and a right to compensation upon a "sale or exchange" of the property before a specified date brought an action in assumpsit to recover his commission, the property owner having conveyed the property before the specified date to the holder of a mortgage on the property in consideration of a cash payment of $1,000 and the cancellation of the mortgage and bond. The court held that the conveyance constituted a "sale" within the terms of the contract between owner and real estate broker and that the broker was entitled to his commission.

In Larus v. Commissioner of Internal Revenue, 2 Cir., 123 F.2d 254, 255, the owners of real estate deeded to the mortgagee all of their interest in the premises in consideration of a release from liability on the bond and mortgage. This resulted in a loss to one of the owners which he sought to deduct in computing his federal income tax as a loss sustained "upon the sale or exchange of a capital asset." The Court of Appeals held that a mortgagor's voluntary conveyance of his equity in satisfaction of a mortgage debt was a sale or exchange and any loss resulting therefrom a capital loss.

The fact that the consideration was the extinguishment of debts and not the actual payment of money to Crites does not deprive the transaction of the character of a sale. As stated in Pender v. Commissioner of Internal Revenue, 4 Cir., 110 F.2d 477, loc. cit. 478:

> "* * * When they found themselves unable to pay the notes on maturity, instead of allowing the property to be sold by the trustee, they themselves sold it to the note holder, along with another piece of property, for the amount evidenced by the notes. That this was a sale of the property con-

veyed within any fair meaning of the term, even though the consideration was extinguishment of the debt secured by the deed of trust and not payment in money, does not admit of doubt. As said by Mr. Justice Gray in the Five Per Cent Cases [State of Iowa v. McFarland], 110 U.S. 471, 478, 4 S.Ct. 210, 214, 28 L.Ed. 198, 'A sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent'. See, also, United States v. Benedict, 2 Cir., 280 F. 76, 80; 4 Words & Phrases, Second Series, 437, 441 [38 Words and Phrases, Sale, p. 84]. Here the satisfaction of the notes upon which petitioners were liable was unquestionably the equivalent of the payment of money."

Nor was the nature of the transaction changed because the sale was made to the holder of one of the notes secured by the mortgage, instead of to a third party. Ibid.

Nor was the conveyance rendered involuntary in nature by the fact that it was made in order to avoid foreclosure. In Philips v. Commissioner of Internal Revenue, 3 Cir., 112 F.2d 721, a mortgagor, unable to make a payment due under a deed of trust on his property, was notified by counsel for the mortgagee that unless payment was made foreclosure would follow. Thereafter mortgagee's daughter under authority from her mother made the payment, in consideration of mortgagor's conveyance of the property to her. In an income tax action it was contended that the transaction was not a sale and that the loss resulting therefrom was not a loss from a sale within the meaning of the Revenue Act. It was held that the transaction was a sale; that the conveyance was voluntary; that even though made under threat of foreclosure mortgagor had a choice; that his exercise of this choice was a voluntary act and that he received a valuable consideration, namely, relief from his personal liability to make the payment required under the mortgage. We adopt this reasoning.

The basic philosophy of Instruction D–1 was that the transaction could not be regarded as a sale if Crites received no consideration other than the extinguishment of the debts. In this respect the instruction misstated the law and constituted reversible error.

For this reason the judgment of the trial court granting plaintiffs a new trial should be affirmed and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the trial court is, accordingly, affirmed.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.