**BYERS BROS. REAL ESTATE & INSURANCE AGENCY, INC., a Corporation, Appellant,**

v.

**H. Howard CAMPBELL and Suburban Realty Company, Inc., a Corporation, Respondents.**

No. 22907.

Kansas City Court of Appeals.

Missouri.

Nov. 2, 1959.

Thaine Q. Blumer (Blumer & Wright), Kansas City, for appellant

Robert E. Coleberd, Arthur R. Kincaid (Hale, Coleberd, Kincaid & Waters), Liberty, for respondent.

HUNTER, Judge.

This is an action for damages by plaintiff-appellant, Byers Brothers Real Estate and Insurance Agency, a corporation, against defendants-respondents, Suburban Realty Company, Inc., a corporation, and its employee H. Howard Campbell.

According to the petition defendant H. Howard Campbell acting for his employer Suburban Realty Company, Inc., and with its knowledge and consent "by the use of deceit, fraud and malicious misrepresentations, did induce the defendants M. T. Browning and Agnes G. Browning to breach the contract" * * * "that defendants M. T. Browning and Agnes G. Browning were aided, abetted and induced to breach said contract by the defendant H. Howard Campbell," * * * "that the acts of the defendants * * * amounted to a conspiracy among the defendants to breach the lawful contract * * *." The petition asked both actual and punitive damages. Upon trial to a jury plaintiff received a verdict for $100 actual damages

and $4,500 punitive damages. The trial court sustained defendants' motion for a new trial, and plaintiff has appealed.

The controversy arose as a result of the efforts of the Brownings to sell their house located in Clay County, Missouri. By written contract dated April 8, 1957, they employed plaintiff company to sell the house agreeing " * * * that the owner hereby appoints (plaintiff) as the sole and exclusive agent for the sale of said property" at a stated price of $8,750 or at any price agreeable to the owner. " * * * This exclusive agency contract is irrevocable for a period of 30 days * * * if the property be sold or otherwise disposed of by anyone while this contract is in effect, the owner agrees to pay the agent a commission of five (5) per cent on the gross amount of the sale * * *."

Shortly thereafter and within the 30 days, defendant Campbell brought a Mr. and Mrs. Hughes to look at the house and they wanted to buy it. Marion T. Browning testified by deposition "I told Mr. Campbell at that time that I had given the property exclusive to another company." * * * "Well, he said, 'There is nothing much I can do then,' and he went on to (his) office * * *." The next day he returned and said he had talked it over with his superiors. "He had this contract with him and he said if we would sign it, he said they could hold them to the contract until the exclusive was up with Byers Realty Company, and he said then we would sign the final papers and I wouldn't have to pay my commission, you know, my five per cent—" "Question: Twice? Answer: Yes." " * * * I said, 'I don't want to get in any trouble over this thing'; I said, 'could I take this contract over and let my lawyer look at it?' He said, 'no, that won't be necessary.' "

According to the testimony of defendant Campbell he was advised by the Brownings that there was a 30-day exclusive listing with another company and that when Mr. Browning found out the Hughes had enough money to purchase the house Mr.

Browning said, "Well, you have a buyer. I really want to sell the place, and I will sell it to them even if it means that I will have to pay double sales commission."

The Brownings then signed the agreement to sell to the Hughes, and, shortly after the expiration of the 30-days' exclusive contract, gave their deed to the property to the Hughes who now own and occupy the premises. The Brownings paid a 5 per cent sales commission on the $8,000 sales price to defendant Suburban Realty Company but refused to pay any commission to plaintiff.

There is substantial evidence to the effect that during the 30-day exclusive agency contract, plaintiff expended considerable time, effort, and some money in its endeavor to find a buyer for the premises. On one occasion it took a prospective purchaser, Mr. Waters, to Mr. Browning, who, according to evidence adduced by plaintiff, first stated he would sell to Waters upon certain conditions, but upon those conditions being agreed to, refused, and endeavored to discourage Waters from wanting to buy the house. Nor did the Brownings reveal to plaintiff or Mr. Waters that they had already contracted to sell their house to the Hughes for $8,000.

When the case was called for trial but prior to the swearing of the jury, plaintiff dismissed with prejudice as to the defendants, Mr. and Mrs. Browning, stating it had compromised and settled its claim against them for $300.

On this appeal by plaintiff, the defendants urge that the trial court should have sustained their motion for a directed verdict for failure to make a submissible case filed at the close of all the evidence and mentioned in their after trial motion for judgment and in their motion for new trial.

Since the entire record is before us on this appeal, and it would be useless to have a new trial if there is no submissible case, we proceed to examine this contention. See, Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, 77.

Defendants first say that under the evidence the Brownings are the only persons liable to plaintiff, and in the amount of $400, that being 5% of the $8,000 sales price.

In the absence of any contractual provision to the contrary, the general rule is that when the owner of real estate places it in the hands of a broker for sale he does not thereby relinquish his right to sell the property himself or through a second broker, without the first broker's aid, and without being liable to the first broker for any commission.

A different situation exists if the right to sell granted to the broker is exclusive, or if the contract provides for the broker to be compensated regardless of who may make the sale during the term of the contract. In such event the owner would be liable to the broker for the commission specified in the contract if the sale was made either by the owner alone or through another broker. Chamberlain v. Grisham, 360 Mo. 655, 230 S.W.2d 721; Howard & Brown Realty Co. v. Barnett, Mo.App., 206 S.W. 417; Keeney v. Freeman, 236 Mo. 260, 151 S.W.2d 532; Annotation, 64 A.L.R. 395, 407.

If during the agency time provided in such contract the owner himself or through another's aid contracted to sell the property but deferred the execution of the deed until the termination of this agency he would nevertheless be liable for the commission. Mercantile Trust Co. v. Lamar, 148 Mo.App. 353, 128 S.W. 20.

Ordinarily, the second broker through whose aid the sale is accomplished is not liable to the first broker for the commission provided in the contract between the owner and the first broker.

However, it is possible for the second broker to become jointly and severally liable with the owner of the property.

When the owner of the property is bound by a contract of the nature before us

conspires with a second broker, who knows that there is a contract of that nature in effect, to contract for the sale of that property within the contract agency time of the first broker and to conceal that fact from the first broker in order to deprive him of the commission to which he is entitled by withholding from him the fact that such sale has been agreed to and in pursuance thereof they carry out their conspiracy, the result is an actionable conspiracy and both the owner and the second broker are liable for the resulting damages. Louis Schlesinger Co. v. Rice, 4 N.J. 169, 72 A.2d 197; Rosen v. Alside, Inc., Mo.Sup., 248 S.W.2d 638; California Auto Court Ass'n v. Cohn, 98 Cal.App.2d 145, 219 P.2d 511; Edison Realty Co. v. Bauernschub, 191 Md. 451, 62 A.2d 354; Annotations, 97 A.L.R. 1279; 26 A.L.R.2d 1227, 1284; 146 A.L.R. 1417; cf. Horn v. Seth, 201 Md. 589, 95 A.2d 312.

■ It is no defense in an action against the second broker that there is an available action against the owner, since the two are joint wrongdoers, and each is liable for the loss

■ It is fundamental that under such circumstances if the second broker acted through his agent, such agent is also liable as a co-conspirator.

■ Taking into account all of the evidence admitted by the trial court we rule that a submissible jury case was made against defendants.

We do not undertake to pass on the question of whether or not punitive damages may be obtained for the reason that counsel have not raised or briefed that question but have contented themselves with the broad question of whether a submissible case was made.[1]

Appellants challenge the admissibility of some of the evidence, particularly the unsigned deposition of Marion T. Browning.

As one of his grounds for granting a new trial the trial judge assigned its admission into evidence as error.

That deposition was taken on behalf of plaintiff on February 8, 1958, at the Kansas City law office of plaintiff's counsel with defendants' counsel present and participating. During the first day of the trial, March 26, 1958, plaintiff offered in evidence an unsigned, unfiled and uncertified copy of that deposition. Upon objection the offer of the deposition was withdrawn. Later, plaintiff offered in evidence the original deposition marked "Filed, March 26, 1958," unsigned and containing the following certification under his notorial seal:

"I, Myron M. Dupey, a notary public within and for the county of Jackson in the State of Missouri, do hereby certify that the deposition of Marion T. Browning was taken in Stenograph by me on the 8th day of February, 1958, and that the same was reduced to writing by me; that the aforesaid witness was notified by United States Mails at the address given in said deposition on the 20th day of February, 1958, that the said deposition was completed and ready for signature to be affixed thereto, but that to date the witness has failed to appear and sign the same.

"I am this date requesting the clerk where said cause is pending to file said deposition.

"Dated at Kansas City, this 26th day of March, 1958."

Over defendants' objection that it was unsigned it was received in evidence and read to the jury. Defendants take the position that inasmuch as there was no waiver of signature by the witness or the parties and an alleged failure to follow the requirements of Section 492.340 RSMo 1949, V.A.M.S. permitting the filing of an

---

1. Cf. Hart v. Midkiff, Mo.Sup., 321 S.W.2d 500, 508(12–13); Prosser, Law of Torts, 2d Ed., Chapter 23, Pages 744–45; 15 Am.Jur., Damages, Section 273, Pages 708–09; 25 C.J.S. Damages § 120, pp. 716–717.

unsigned deposition under named conditions it was reversible error to admit the deposition into evidence. Plaintiff's position is that there was a substantial compliance with the statute in that the witnesses' failure to return to plaintiff's attorneys' office and sign the deposition after having been sent a letter to that effect to his home on Route 2, Eureka, Missouri, is tantamount to a refusal to sign within the meaning of the statute.

The statutory section reads: "492.340. Deposition shall be submitted to witness for examination—signing of deposition

"When the testimony is fully transcribed *the deposition shall be submitted to the witness for examination* and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found, or is dead or *refuses to sign. If the deposition is not signed by the witness, the officer shall sign it and state on the record* the fact of the waiver or of the illness, or death or absence of the witness or *the fact of the refusal to sign together with the reason, if any, given therefor;* and the deposition may then be used as fully as though signed, unless on a motion to suppress the court holds that the reasons given for the *refusal* to sign requires rejection of the deposition in whole or in part." (Italics Ours.)

■ This statute clearly and unequivocally provides the deposition *shall* be submitted to the witness for examination. As we view it, the mailing of a notice by the notary-reporter to the witness at his Eureka, Missouri, address to the effect that the deposition is available to the witness at the notary reporter's office in Kansas City and that the witness should come in to that office and sign it is not a compliance with the statutory requirement that the deposition shall be submitted to the witness for examination. Since the deposition was not submitted to him for examination there is no merit to the contention that his *failure* to go to the notary reporter's office and sign it is tantamount to his *refusal* to sign it within the meaning of the statute. We do not mean to say that under any circumstances a failure to sign may not amount to a refusal to sign, but rule only that under the facts here presented there was *no refusal to sign within the* contemplation of the statute.

The trial judge properly granted a new trial for the erroneous admission into evidence of the deposition of Marion T. Browning containing testimony affecting the merits of the action.

Plaintiff also contends that the testimony of witnesses King and Waters relating to their conversation with Witness Browning in apparent furtherance of the alleged conspiracy was not hearsay and being properly admissible the trial judge erred in assigning its admission in evidence as a reason for granting a new trial. Defendants' theory is that since Browning was dismissed as a party to the suit before the trial began, testimony relating to what he said and did outside the presence of any of the remaining defendants in connection with the charged conspiracy is hearsay and thus not admissible.

■ The rule is that where a conspiracy is properly shown to exist, the act or declaration of one conspirator in the prosecution of the common scheme, plot or undertaking is the act or declaration of all the conspirators, and thus, as to them is not hearsay, and may be admitted into evidence. McCutchan v. Kansas City Life Insurance Co. of Kansas City, Mo., Mo.App., 122 S.W.2d 59; 15 C.J.S. Conspiracy § 18, p. 1028. This is so even though the act or declaration is of one who is not a named defendant in the action but who is one of the named co-conspirators. 11 Am.Jur.,

Conspiracy, Sec. 40, Pages 571 ff.; 31 C.J.S. Evidence § 362, pp. 1138–1141. The McCutchan case and similar abundant authority which sustain the plaintiff's position on this particular contention will no doubt be available to the trial court upon retrial.

Defendants contend the payment of $300 by the Brownings to plaintiff in compromise settlement of its claim against the Brownings and its dismissal with prejudice as to the Brownings resulted in defendants having no liability to plaintiff.

Co-conspirators are joint tortfeasors and their liability is joint and several. Rogers v. Rogers, 265 Mo. 200, 177 S.W. 382; Wooldridge v. Scott County Milling Co., Mo.App., 102 S.W.2d 958.

Section 537.060 RSMo 1949, V.A.M.S. provides in part: "It shall be lawful for all persons having a claim or cause of action against two or more joint tort-feasors or wrongdoers to compound, settle with, and discharge any and every one or more of said joint tort-feasors or wrongdoers for such sum as such person or persons may see fit, and to release him or them from all further liability to such person or persons for such tort or wrong, without impairing the right of such person or persons to demand and collect the balance of said claim or cause of action from the other joint tort-feasors * * *."

Plaintiff was following the authorization of this statute in settling with the Brownings for $300 of his $400 actual damages and dismissing its case as to them. Its right to proceed against the other alleged joint tort-feasors to collect the balance of its claim remained unimpaired. Cf. Vinson v. East Texas Motor Freight Lines, Mo.Sup., 280 S.W.2d 124; Clifton v. Caraker, Mo.App., 50 S.W.2d 758; Pickett v. Wren, 187 Mo.App. 83, 174 S.W. 156.

The trial court included in its grounds for the granting of a new trial error in plaintiff's Instruction No. 1. Plaintiff has re-

ceived the benefit of defendants' contentions in support of the trial court's ruling, and it is unlikely that the problem will arise on re-trial. It would serve no useful purpose to examine these contentions on this appeal.

The order of the trial court granting a new trial is affirmed. It is so ordered.

All concur.