CENTURY 21–JOHNMEYER, INC., Plaintiff–Respondent,

v.

Jerry L. LUGAR and Elfriede Lugar, Defendants–Appellants.

No. 58467.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 20, 1991.

David W. Suddarth, Mueller & Suddarth, Troy, for defendants-appellants.

John M. McIlroy, Jr., David H. Ash, McIlroy and Millan, Bowling Green, for plaintiff-respondent.

CRANDALL, Judge.

Defendants, Jerry L. and Elfriede Lugar, appeal from the judgment in a court-tried case, in favor of plaintiff, Century 21–Johnmeyer, Inc., for a $6,000 commission for the sale of real estate pursuant to a listing agreement. We affirm as modified.

The evidence, viewed in a light most favorable to the judgment, established that on October 4, 1988, defendants entered into a contract for deed with Charles and Nellie Ruth Martin to purchase a 220 acre farm for $100,000. Defendants gave the Martins a $5,000 down payment as provided by the contract. The contract provided that on January 2, 1989, defendants would pay the Martins an additional $25,000 and deliver a $70,000 promissory note and deed of trust. The Martins would then convey title to defendants. The contract contained a liquidated damages clause that provided:

7. If the Sellers perform all the requirements hereof on their part and tender marketable title in fact to the Buyer, but the Buyer fails or refuses to close this contract and pay the balance of the purchase price due as set forth herein, the Sellers may declare this contract null and void and retain the money paid to the Sellers under the terms hereof as liquidated damages, all parties hereto acknowledging that actual damages are difficult, if not impossible, to ascertain.

Defendants took possession of the farm on October 1, 1988, and began making improvements. On October 18, 1988, defendants signed a "listing agreement" with plaintiff. The listing agreement provided that plaintiff list for sale approximately 280 acres of land owned by defendants including the 220 acre Martin farm. The listing agreement stated:

If a buyer is found who is ready, willing and able to purchase the property, by BROKER, by SELLER, or by any other person, at the price and upon the terms hereinafter set forth, or at any other price, or upon any other terms accepted by SELLER, during the term of this contract, or if exchanged or optioned during term of this contact, SELLER agrees to pay BROKER a commission computed as set forth in this contract.

The amount of plaintiff's commission was computed at the rate of six percent.

Before January 2, defendants told the Martins that they no longer wanted the farm and could not close as agreed. The Martins then found another purchaser for the property. Defendants and Martins entered a settlement on January 31, 1989, which cancelled the contract. Pursuant to that settlement, the Martins waived any rights under the contract and returned the $5,000 to defendants. Defendants then ex-

ecuted a quit-claim deed to the Martins.[1]

On March 1, 1989, the Martins sold the farm to Jerry and Selma Flynn, Ruth Martin's nephew and his wife. The Flynns received a warranty deed from the Martins that was recorded the same day as the quit-claim deed tendered by defendants.

Plaintiff brought an action seeking the payment of a commission from defendants for the sale of real estate pursuant to the listing agreement. The trial court subsequently awarded plaintiff damages of $6,000.

Because the trial court did not make specific findings of fact, we consider the facts as having been found in accordance with the result reached. Rule 73.01(a)(2). To enter a judgment for $6,000 the trial court necessarily had to find: (1) that a valid listing agreement existed between plaintiff and defendants; (2) that defendants completed a sale; and (3) that the sales price was $100,000. On appeal, neither party disputes the validity of the listing agreement.

■ The first issue then, is whether a sale of the real property occurred. The evidence at trial was that two purported transfers occurred after the execution of the listing agreement between plaintiff and defendants. We first consider the final transfer which was the sale from the Martins to the Flynns.

The contract between plaintiff and defendants entitled plaintiff to a commission, *inter alia*, if there was a sale of the real estate "upon any other terms accepted by [defendants]." Plaintiff agrees that defendants could not control the disposition of the property by the Martins after the January 31, 1989 settlement. Plaintiff argues, however, that because defendants knew in advance that the Martins were going to sell to the Flynns, that defendants accepted the terms of the sale within the meaning of the listing agreement. We disagree.

Defendants were not parties to the sale between the Martins and the Flynns. No sale occurred as between defendants and the Flynns. There was no substantial evidence adduced that the Martins acted as agents for defendants for the sale of the real estate or that defendants and the Martins acted in concert to defraud plaintiff of its real estate commission. Execution of the settlement extinguished the defendants' rights, if any, and they could no longer accept or reject any future sale of the property. The knowledge by defendants that another sale was to take place in the future is immaterial. The sale of the property by the Martins to the Flynns did not impose liability on defendants for payment of a commission to plaintiff.

■ The second purported transfer is the settlement between defendants and the Martins. The listing agreement also entitled plaintiff to a commission if there was a sale of the real estate "upon the terms hereinafter set forth, or at any other price."

The term "sale" can be broadly defined as the transfer of property rights for valuable consideration. *Schulte v. Crites*, 300 S.W.2d 819, 822 (Mo.App.1957). In the sale of real estate, valuable consideration may include the release of a valid promissory note and deed of trust. *Schulte v. Crites*, 300 S.W.2d at 822.

Here, the Martins returned the $5,000 payment to defendants, which they arguably were not obligated to do under the terms of the liquidated damages clause of the October 4, 1988 contract, and released defendants from any further obligations under the contract. Defendants, in return executed a quit-claim deed in favor of the Martins. Viewing the evidence in a light most favorable to the judgment, the trial court could have reasonably found that defendants transferred whatever equitable interest that they may have had in the property to the Martins for valuable considera-

---

1. Apparently, as a separate matter, the Martins paid defendants $4,320 on January 5, 1989 for improvements made by defendants to the real estate.

tion. The trial court did not abuse its discretion in finding that a sale occurred.

 The next issue is the amount of the sales price of defendants' property interest to the Martins. Clearly, the return of the $5,000 down payment to defendants would be part of the sales price. The question then is whether the sales price included an additional $95,000.

The liquidated damages clause in the contract for deed did not expressly limit the remedies available to the Martins. Theoretically, the Martins could have attempted to pursue other remedies such as an action for additional damages or an action for specific performance. *See, e.g., Robert Blond Meat Company v. Eisenberg*, 273 S.W.2d 297, 298 (Mo. banc 1954) (specific performance was available to a vendor under a land sale contract). Whether or not the Martins would have been successful is speculative. Plaintiff asserts, however, that when the Martins agreed to forego their rights under the contract they released a debt of $95,000. We disagree.

A debt is an unconditional promise to pay a fixed sum at a specified time. *Lowery v. Fuller*, 221 Mo.App. 495, 281 S.W. 968, 972 (1926). The contract conditioned defendants' obligation to pay on the execution and delivery of the warranty deed to the farm. Defendants never executed the note and deed of trust. Because the conditions were never met and the note was never signed, the payment was conditional. The Martins did not forgive a debt, but rather released defendants from any obligation under the contract. The release of that obligation does not, *ipso facto*, equal the release of an additional $95,000 fixed obligation of defendants. This is particularly true in light of the liquidated damages clause of the contract. The only substantial evidence of value of the sale between defendants and the Martins was the return of $5,000.

The trial court erred in entering judgment in favor of plaintiff and against defendants in the amount of $6,000. Because the evidence supports a finding that a sale occurred in the amount of $5,000 subject to a real estate commission of six percent, we enter judgment in favor of plaintiff, Century 21–Johnmeyer, Inc., and against, defendants, Jerry L. and Elfriede Lugar, in the amount of $300. Rule 84.14. We affirm as modified.

GRIMM, P.J., and SATZ, J., concur.